# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

### Airman First Class BRANDON T. WRIGHT
### United States Air Force

### Misc. Dkt. No. 2014-10

### 13 January 2015

### ____ M.J. ____

GCM convened at Joint Base Andrews Naval Air Facility Washington, Maryland. Military Judge: Joshua E. Kastenberg.

Appellate Counsel for the Appellee: Captain Thomas A. Smith (argued) and Colonel Patrick J. Wells.

Appellate Counsel for the United States: Captain Thomas J. Alford (argued); Lieutenant Colonel Katherine E. Oler; Major Mark F. Rosenow; and Gerald R. Bruce, Esquire.

*En Banc*

HECKER, MITCHELL, SANTORO, WEBER, TELLER, KIEFER, and BENNETT[1]
Appellate Military Judges

PUBLISHED OPINION OF THE COURT

HECKER, Senior Judge and WEBER, Judge:

The Government filed an interlocutory appeal under Article 62, UCMJ, 10 U.S.C. § 862, in this matter. The military judge abated the proceedings after the Government refused to comply with his order to disclose materials the Government asserted were privileged. The Government appealed this abatement order. We conclude that the military judge's ruling was incomplete and ambiguous in that he should have taken further steps to define what materials were appropriate for in camera review. We

---

[1] Chief Judge Allred and Judge Contoveros recused themselves from participation in this matter due to their involvement in this case before their assignments to this court. *See* Air Force Standards for Criminal Justice, Standard 6-1.9; Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, Attach. 3 (25 September 2014).

therefore grant the Government's appeal solely on this basis and remand for clarification and action in accordance with the decision below.

## *Procedural Background*[2]

The appellee's case made its way to this court by way of an unusual journey. The appellee originally had his case dismissed by a general court-martial convening authority (GCMCA) following an Article 32, UCMJ, 10 U.S.C. § 832, investigation. Shortly after dismissal, the acting Secretary of the Air Force transferred the appellee's case to a different convening authority who ultimately referred the case to a general court-martial.

The appellee was originally charged on 14 May 2013 with one specification of rape, one specification of aggravated sexual contact, one specification of abusive sexual contact, and one specification of sexual assault, all in violation of Article 120, UCMJ, 10 U.S.C. § 920, and one charge and one specification of disorderly conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The charges and specifications related to his sexual encounter with a noncommissioned officer from his duty section following a shopping trip and an evening of watching movies and drinking. The GCMCA for these charges was then-Lieutenant General (Lt Gen) Craig Franklin, the commander of Third Air Force.

There were two Article 32, UCMJ, investigations in the appellee's case. Following the first Article 32, UCMJ, investigation in June 2013, which included testimony from the named victim, the Article 32 investigating officer recommended the charges not be referred to trial, citing his view that the named victim lacked credibility, his belief that there were inconsistencies in her various accounts of the events, and his view that the case contained evidentiary deficiencies (including the fact that a friend of the appellee who was present during the encounter stated the sexual acts appeared consensual). Although two staff judge advocates[3] for the special court-martial convening authority (SPCMCA) agreed with the investigating officer, the SPCMCA recommended referral. The staff judge advocate for the GCMCA concurred with the investigating officer's evidentiary assessment and recommended none of the charges be referred.

The named victim indicated some desire to speak with the GCMCA prior to disposition of charges, but that did not occur. Her special victims' counsel (SVC), however, provided the GCMCA with a 12-page memorandum expressing the named victim's desire that the case be brought to trial, among other matters. After considering

---

[2] This background section and the subsequent discovery litigation background section are provided for context leading up to the military judge's ruling at issue. We make no specific findings of fact in this section to support our holding as we lack fact-finding authority in this interlocutory appeal. The matters in this section are drawn from unambiguous factual matters with which the parties do not appear to disagree as well the military judge's findings of fact that are fairly supported by the record.

[3] Due to an assignment change, two individuals served as staff judge advocate for the Special Court-Martial Convening Authority (SPCMCA) during the relevant time period.

the SVC's memorandum, the GCMCA dismissed all charges and specifications on 3 September 2013.

Shortly after that action, The Judge Advocate General of the Air Force (TJAG), Lt Gen Richard Harding, spoke telephonically with the GCMCA's staff judge advocate, Colonel (Col) Joseph Bialke.[4]  According to Col Bialke, Lt Gen Harding stated the following:  the failure to refer the case to trial would place the Air Force in a difficult position with Congress; absent a "smoking gun," victims are to be believed and their cases referred to trial; and dismissing the charges without meeting with the named victim violated an Air Force regulation.[5]

On 6 September 2013, around the same time as Lt Gen Harding's conversation with Col Bialke, the acting Secretary of the Air Force, acting on Lt Gen Harding's advice, attached the appellee to the Air Force District of Washington (AFDW) at Joint Base Andrews, Maryland, "for disposition of matters related to [this] alleged sexual assault."  The memo effecting the transfer stated as follows:  "Disposition of this case, whether by no action, administrative action, nonjudicial punishment, court-martial or otherwise, is entirely within the discretion of the commander or convening authority as appropriate, under applicable directives.  No inference whatsoever should be drawn from the attachment of Airman Wright to AFDW."  Major General (Maj Gen) Sharon Dunbar, served as the AFDW commander and the GCMCA over this case after the transfer.  The appellee remained stationed in Italy.  By the time of the case's transfer, the named victim had been physically reassigned to the National Capital Region upon her request due to the allegations in this case.

After the transfer of this case, the servicing legal office at Joint Base Andrews reviewed the evidence and drafted one charge and two specifications alleging rape by unlawful force, which were preferred on 7 November 2013 by the Force Support Squadron commander at the 11th Wing, Joint Base Andrews.  No new facts were discovered about the underlying allegations in this case between the initial dismissal and the institution of these new charges.  A military judge was appointed as the investigating officer and a second Article 32, UCMJ, investigation was conducted on 14 January 2014 in which the named victim testified along with other witnesses.

---

[4] Lieutenant General Harding and Colonel Bialke both retired before the Government brought this appeal.

[5] Currently, when a General Court-Martial Convening Authority (GCMCA) decides not to refer certain types of sexual assault charges to trial after the GCMCA's staff judge advocate has recommended that these charges not be referred to a court-martial, the case file is to be forwarded to the next superior GCMCA for review.  The case file must include "a certification that the victim [had been] notified of the opportunity to express [her] preference as to disposition of the alleged offense for consideration by the convening authority."  Air Force Guidance Memorandum to AFI 51-201, ¶¶ 4.14, 4.21, 4.22.3.  The template for the certification is a memorandum to the victim that contains the following language:  "If you [or your Special Victims' Counsel] would like to speak with (Rank and Name of SPCMCA) directly by telephone, VTC, or in person, please contact (rank and name of [Victim-Witness Advocacy Program point of contact] or Trial Counsel) at (phone number)(email address) to arrange a meeting."  *Id.* at Figure 4.15.

Like the first investigating officer, the second investigating officer found the evidence did not establish reasonable grounds to believe the appellee committed the offense of rape (due to the lack of "unlawful force"). Unlike the prior investigating officer, he recommended the lesser-included offenses of sexual assault (by bodily harm) be referred to a general court-martial. Both the SPCMCA and his staff judge advocate recommended referring the charges as preferred, while the staff judge advocate for the GCMCA agreed with the investigating officer's conclusions and recommended referring the lesser-included offenses to trial. On 6 March 2014, contrary to her staff judge advocate's advice, the GCMCA referred the preferred rape specifications to a general court-martial. However, following a successful defense motion for dismissal due to improper referral, the Government proceeded to trial on the lesser-included specifications.[6]

*Background on Discovery Litigation*

On 12 March 2014, the appellee's trial defense counsel asked the Government to produce "any and all correspondence"[7] about the appellee's case, Lt Gen Franklin's retirement, and "the handling of sexual assault generally" from numerous individuals and offices. These included: relevant legal offices, convening authorities, and commanders; TJAG; and the offices of several senior military leaders up to the office of the Secretary of Defense. Trial defense counsel's request described certain investigatory steps he had taken prior to concluding he had:

> good faith to believe that written and/or electronic correspondence exists that could shed light on the unusual procedural aspects of this case, the impact of high-level and political pressure on the decision to transfer and refer this case, and the impact (or perceived impact) of Lt Gen Franklin's decision to dismiss the charges on his career. Such information would all be relevant to exploring the extent of any actual or perceived [unlawful command influence]. Furthermore, because the Defense believes such decisions may have been based, in part, on internal and external pressures related to the handling of sexual assault cases, it is vital to the Defense's understanding of these issues to obtain communications related to the handling of sex

---

[6] The improper referral motion was based on Article 34, UCMJ, which states a convening authority "may not refer a specification . . . to a general court-martial for trial unless he has been advised in writing by the staff judge advocate that . . . the specification is warranted by the evidence indicated in the [Article 32, UCMJ] report of investigation." 10 U.S.C. § 834 (2012). The Government agreed the military judge should grant the defense motion as to the rape specifications but argued the lesser-included offenses of sexual assault should be permitted to proceed to trial. The defense then agreed to drop its motion if the case went forward as two specifications of sexual assault by bodily harm.

[7] This request "includes, but is not limited to emails, faxes, summaries of conversations, memos for record, and memoranda."

assault cases generally in addition to those communications specifically addressing [the appellee's] case.

On 24 March 2014, the Government agreed to produce correspondence relating to the appellee's case for certain offices involved in the second iteration of his case: the AFDW GCMCA and her legal office, the 11th Wing SPCMCA and his legal office, and the squadron commander who preferred the second set of charges. The defense had requested comparable information from the offices of: (1) those involved in the first iteration of his case in Italy, (2) senior military and civilian leaders, and (3) TJAG. Additionally, the defense had sought correspondence involving: (1) sexual assault and sexual assault prosecutions generally, (2) Lt Gen Franklin's retirement, (3) public affairs or the media, and (4) the AFDW's Sexual Assault Prevention & Response (SAPR) office. The Government denied these requests except to the extent they overlapped the requests the Government had agreed to process.

On 25 March 2014, the defense filed a 45-page motion to dismiss for unlawful command influence, defective preferral, and defective referral, with 390 pages of attachments. For the unlawful command influence aspect of the motion, the defense argued that a "toxic" atmosphere existed with regard to sexual assaults in the military which, when coupled with pressure to increase prosecutions and convictions, created an environment in which no military accused facing sexual assault charges would be treated fairly. The defense contended "the level of toxicity and pressure" had reached an unprecedented level in the appellee's case where:

> After a thorough Article 32 investigation, which to date has yet to be found improper, four experienced JAGs reviewed the evidence independently and recommended dismissal due to lack of sufficient evidence. [Lt Gen] Franklin subsequently agreed and dismissed the charges. For reasons still unknown, the [Major Command], TJAG, [the Chief of Staff of the Air Force], and [the Secretary of the Air Force] responded by second-guessing the recommendation of competent [staff judge advocates] and a decorated 3-star general, ultimately transferring the case in an unprecedented move to a new Convening Authority with a well-documented role in Sexual Assault Prevention.[8] In order to further reinforce the message that sex assault cases, particularly this one, should not be dismissed, [the Secretary of the Air Force] and [the Chief of Staff of the Air Force] forced Lt Gen Franklin into retirement at a lower rank. Although the [commanders and judge advocates] currently involved in this case will likely not admit to being explicitly pressured, the

---

[8] Major General Dunbar previously served as a member of the Defense Task Force on Sexual Assault in the Military Services.

message that was sent and received by everyone from the general public to the former [Deputy Judge Advocate General] and current [Air Force Inspector General] is that TJAG, [the Chief of Staff of the Air Force], and [the Secretary of the Air Force] are not impartial, but have an interest in the outcome of sexual cases and will take action against those whose actions demonstrate otherwise.[9]

The defense argued unlawful command influence existed in various stages of this case, emanating from various sources including the President of the United States, the Secretary of Defense, the Chief of Staff of the Air Force, and TJAG. The defense alleged this unlawful command influence came from both statements and training materials and constituted both actual and apparent unlawful command influence.

That same day, the defense filed a motion to compel discovery, arguing that actions by Air Force leadership and members of the Judge Advocate General's Corps "unlawfully influenced [the] preferral, referral, and subsequent proceedings in the current case and caused a defective referral." The motion also alleged that "statements by Congress, [Air Force] leadership, and members of the [Judge Advocate General's] Corps concerning the appropriate disposition of sexual assault have unlawfully influenced these proceedings beginning with preferral and have created a climate in which it is impossible for [the appellee] to receive . . . fair due process." The defense motion then articulated the defense's view why it should receive discovery of correspondence involving the appellee's initial chain of command in Europe, senior Air Force officials, and the AFDW commander. The defense also argued it should receive correspondence relating to Lt Gen Franklin's retirement, general sexual assault-related correspondence, SAPR materials, public affairs materials related to this case, and similar categories of correspondence.

Following an Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing, the military judge largely granted the defense's motion to compel discovery on 31 March 2014. In reaching this conclusion, he stated the appellee "is certainly entitled to learn of all of the factors which have brought him to trial, including whether the senior leaders of the military establishment have influenced the shaping of media reporting that may undermine [his] due process rights." He noted the appellee had alleged certain facts which, if true, would shift the burden to the Government to prove beyond a reasonable doubt that either there was no unlawful command influence or that remedial measures would assure the appellee a fair trial. Drawing an analogy to discovery in the selective prosecution context, the military judge concluded the Government was required to provide discovery because the appellee had shown some evidence of unlawful command influence. He therefore

---

[9] The references to the former Deputy Judge Advocate General and the Air Force Inspector General involve communications from these officials that were attached to the defense's motion. Both officials expressed some concern with either Lieutenant General Harding's involvement in this case or with the actions taken involving Lieutenant General Franklin.

ordered the production of several categories of correspondence relating to this case and sexual assault generally. The military judge's order covered numerous officials and organizations, ranging from the squadron commander who preferred charges to the office of the Secretary of Defense.

Based on a request sent by trial counsel to relevant offices, documents were provided to the prosecution team on a rolling basis between mid-April and 6 June 2014. Ultimately, the Government collected almost 8,000 documents totaling approximately 56,000 pages. Government counsel reviewed each document to determine if it was responsive, relevant, and/or privileged. This process consumed hundreds of man-hours and involved multiple individuals.

Of these documents, the Government provided a total of approximately 2,000 responsive non-privileged documents to the defense. The Government also identified approximately 3,500 responsive documents containing, in its view, attorney-client communications covered by Mil. R. Evid. 502, protected attorney work product, potential "government information" covered by Mil. R. Evid. 506, or some combination thereof, with the "overwhelming majority" being in the Mil. R. Evid. 502 category.

*The Military Judge's First Abatement Order*

On 6 June 2014, the Government filed a motion for appropriate relief, asking the military judge to "recognize the government's assertion of attorney-client privilege and protection of its attorney work-product in determining satisfaction of [the] Discovery . . . Order." The Government contended even in camera review would be inappropriate because no exception to Mil. R. Evid. 502's attorney-client privilege applied, there is no exception to the rule for "constitutionally required" information in the discovery context, and no provision allowed for in camera review. In its response, the defense asked the military judge to deny the Government's motion and compel disclosure of the 3,500 documents, arguing the attorney-client privilege did not apply once a colorable showing of unlawful command influence has been made and, even if it did, appellee's constitutional right to the production of this evidence overcame any such privilege.

On 22 June 2014, the military judge issued his first abatement order. He found the appellee had raised a "colorable claim" of unlawful command influence in his 25 March 2014 motion and had a "broad right" to discovery in order to assert that colorable claim. He agreed with the Government that it possessed a privilege over the documents at issue, and found no listed exception to Mil. R. Evid. 502 applied.[10]  However, he also

---

[10] Although expressing some concern about whether the trial counsel was formally instructed by senior Department of Defense officials to assert this privilege, the military judge held the correspondence at issue is protected by the attorney-client privilege and no specified exception to the privilege applies. The Government, understandably, does not challenge that conclusion in this appeal. At oral argument, appellate defense counsel also conceded that the privilege applies to this correspondence. Therefore, the military judge's holding concerning the existence and scope of the privilege is the "law of the case" at this point. *United States v. Morris*, 49 M.J. 227, 230 (C.A.A.F. 1998) ("Under the 'law of the case' doctrine, an unchallenged ruling 'constitutes the law of the case and binds the

concluded that in some circumstances, an accused's constitutional right to evidence under the compulsory process clause may overcome an attorney-client privilege. He concluded that the "means and reasons" and the "mental processes of those attorneys involved in [transferring the appellee to the AFDW] are central to the question [of] whether the preferral, investigation, and referral of charges and specifications [here] were tainted by unlawful command influence, either in appearance or in fact."

The military judge also noted that the "crime or fraud" exception to privilege (Mil. R. Evid. 502 (d)(1)) might apply if an individual knowingly and intentionally engaged in unlawful command influence, or this could constitute misconduct requiring the application of a judicially-created exception. Although there was no indication that this intentional activity had occurred, the military judge concluded the Government's sweeping claim of privilege prevented the appellee from being able to investigate whether there was such an "intentional due process violation" in the handling of his court-martial. Trial counsel asserted that the military judge could rely on the Government's recognition of its duty to produce exculpatory information (apparently including any evidence of an intentional due process violation in the handling of the appellee's court-martial). However, the military judge was not convinced that the requested material would necessarily be produced because trial counsel's "interpretation of [exculpatory] evidence" may vary from that of the appellee or the trial judge and it was "unclear . . . whether the trial counsel can ably and fully investigate the presence of unlawful command influence" within the commands or TJAG's office.

After concluding "evidence of central importance is held by the Government but not produced" to the defense, the military judge abated the proceeding.

*The Military Judge's Second Abatement Order*

The Government asked the military judge to reconsider his ruling by: (1) ruling against the defense in its still-pending motion to dismiss based on unlawful command influence, defective preferral, and defective referral; (2) ordering no privileged or protected materials be released; and (3) permitting the trial to continue without abatement. The Government initially indicated its intention to present live testimony from multiple witnesses in support of its request for reconsideration. Trial counsel then filed signed affidavits and/or stipulations of expected testimony from or relating to:

---

parties.'") We would otherwise question the existence and scope of the privilege for two reasons. First, several federal circuits have indicated the attorney-client privilege may not apply to criminal prosecutors to the same extent as the privilege applies in the civil law context due to the prosecutor's general duty of public service and the prosecutor's higher duty to act in the public interest. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir. 1997); *In re Witness Before the Special Grand Jury 200-2*, 288 F.3d 289 (7th Cir. 2002); *In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998); *In re Grand Jury Investigation (Rowland)*, 399 F.3d 527 (2d Cir. 2005). Second, as discussed later in the body of the opinion, the military judge did not require the Government to specifically assert what documents were at issue and which documents (or portions thereof) were covered by what privilege. When the military judge takes up the discovery issue again, we encourage him to develop his ruling further regarding whether and to what extent the attorney-client privilege applies to the particular documents at issue.

(1) The Honorable Eric Fanning, former acting Secretary of the Air Force
(2) Lt Gen Harding, now-retired former TJAG
(3) Maj Gen Dunbar, now-retired former AFDW Commander (GCMCA)
(4) Col Thomas Zimmerman, SJA for the AFDW
(5) Col William Knight, 11th Wing Commander (SPCMCA)
(6) Col David Waters, 11th Wing Vice Commander
(7) Col Heather LoBue, 11th Wing Staff Judge Advocate
(8) Lt Col Colin Huckins, 11th Force Support Squadron Commander
(9) Col Bialke, now-retired former Third Air Force Staff Judge Advocate
(10) Captain David Mitchell, assistant trial counsel

These documents recounted these individuals' participation in the events surrounding the appellee's case, including their thought processes and the reasons for their actions. These documents largely averred the AFDW commander or her subordinates were given no explicit or implicit instructions how to handle the appellee's case, they were specifically told to resolve the case in whatever matter was deemed appropriate, and they in fact made their decisions or recommendations independently based on the evidence.

The Government argued these documents demonstrated that after the appellee was lawfully attached to the AFDW, there was an "investigation by an impartial [investigating officer] and a legally sufficient recommendation for referral to a qualified and uninfluenced GCMCA who chose to refer the charge and its specifications." Because the documents revealed "every individual at every stage of the proceedings in this court-martial acted in accordance with his and her responsibilities," the Government contended, "there is no [unlawful command influence] to overcome." The Government asserted the evidence presented thus far demonstrated no violation of privilege was necessary to guarantee the appellee a fair trial.

In response, the defense contended it could not be adequately prepared to challenge the Government's evidence or make final arguments on its unlawful command influence motion without access to the correspondence the Government was withholding. The defense argued the submitted affidavits and stipulations did not address the problem of apparent unlawful command influence, and they contended that the submitted documents raised factual questions about the underlying circumstances of this case, as did some of the non-privileged discovery materials disclosed by the Government. In light of that, the defense argued the 3,500 withheld documents remained relevant and necessary on the issue of improper referral and unlawful command influence and were likely to contain information that would contribute to these defense claims.

Following argument at an Article 39(a), UCMJ, session on 8 August 2014, the military judge on 15 August 2014 denied the Government's request for reconsideration and again ordered the proceedings abated until the Government rescinded its exercise of privilege.

In this order, based on Col Bialke's affidavit, the military judge found that Lt Gen Harding implied or told Col Bialke that: (1) congressional interest on military sexual assault cases was so high that the failure to refer the appellee's case to trial would place the Air Force in a difficult position; (2) unless there is a "smoking gun about the victim's credibility," all victims are to be believed and cases referred to trial; and (3) providing the GCMCA with the SVC memorandum in lieu of the GCMCA personally meeting with the named victim did not meet the requirements of Air Force Instruction 51-201. The military judge also took note of Lt Gen Harding's communications with the acting Secretary of the Air Force, the new GCMCA and the AFDW staff judge advocate regarding why the appellee should be or was transferred. The military judge found Lt Gen Harding recommended the case be transferred for another review because Lt Gen Franklin had failed to consult with the named victim and/or because Lt Gen Harding believed the first pretrial investigation was incomplete.

The military judge then concluded the evidence gave rise to "the possibility of government misconduct; that is, the misshaping of legal and other advice to the acting Secretary of the Air Force as well as to the AFDW [Commander] in order to bring the [appellee] to trial by general court-martial." The military judge noted Lt Gen Harding provided "defective pretrial advice to the Secretary of the Air Force." This apparently referred to Lt Gen Harding's failure to advise that notwithstanding Lt Gen Franklin not meeting with the named victim, Article 34(a)(2), UCMJ, 10 U.S.C § 834(a)(2), precluded Lt Gen Franklin from referring the original specifications to a general court-martial once his staff judge advocate had advised the specifications were not warranted by the evidence. The military judge also stated Lt Gen Harding's statement adopting the position of believing an alleged victim "denoted an expectation from [TJAG] of inflexibility in the advice tendered from a GCMCA/SJA to a GCMCA."

The military judge said he had not yet concluded there was any misconduct on the part of TJAG. He also stated "whether unlawful command influence has been intentionally exerted on the pretrial processing of the [appellee's] case, or whether there is apparent unlawful command influence is not yet answerable." However, referring to the appellee's proffer and the evidence provided, he stated: "[T]here is sufficient information before this Court to maintain its initial discovery order . . . in full, because there is evidence of the possibility of misconduct, as well as a colorable claim of unlawful command influence, which must also be equated to misconduct."

Finding "evidence of central importance" was being withheld by the Government through its assertion of privilege and that a privilege cannot overcome the appellee's "Sixth Amendment right to a fair trial with full discovery," the military judge again abated the proceedings.

*Appeal Pursuant to Article 62, UCMJ*

The Government filed a timely appeal pursuant to Article 62, UCMJ, asking this court to set aside the military judge's abatement order. The Government argues the military judge abused his discretion by abating the proceedings after the Government (1) complied with his discovery order, (2) proved beyond a reasonable doubt that no unlawful command influence existed, and (3) properly asserted the attorney-client and work product privileges.

In contrast, the appellee argues our court does not have jurisdiction to review the military judge's ruling and, even if jurisdiction exists, the military judge did not abuse his discretion because after he properly found the appellee had a constitutional right to a fair trial untainted by unlawful command influence, he merely placed upon the Government the choice to assert a privilege or prosecute the appellee.

*Jurisdiction*

Military appellate courts are courts of limited jurisdiction; prosecution appeals are not favored and are available only upon specific statutory authorization. *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008). This court has jurisdiction to hear this appeal under Article 62(a)(1)(A), UCMJ, 10 U.S.C. § 862(a)(1)(A), which authorizes the Government to appeal "[a]n order or ruling which terminates the proceedings with respect to a charge or specification" in a court-martial where a punitive discharge may be adjudged.

Contrary to the appellee's assertion, we find that the military judge's ruling abating the proceedings is tantamount to a termination of proceedings. *See United States v. True*, 28 M.J. 1, 2 (C.M.A. 1989) (holding the military judge's abatement was the "functional equivalent" of terminating the proceedings). Like *True*, the military judge's abatement order came in response to a situation where "intractability" had set in because the Government had definitively decided it would not produce the responsive correspondence. *Cf. United States v. Harding*, 63 M.J. 65, 67 (C.A.A.F. 2006) (holding that the military judge's abatement did not terminate the proceedings where the Government was willing to comply with the military judge's order but was unable to persuade the United States Marshals to timely enforce a warrant).

*Standard of Review*

We review a military judge's decision to abate a court-martial based on a discovery issue for abuse of discretion. *United States v. Ivey*, 55 M.J. 251, 256 (C.A.A.F. 2001); *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004); *United States v. Bowser*, 73 M.J. 889, 895 (A.F. Ct. Crim. App. 2014). "A military judge abuses his discretion when (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record, (2) if incorrect legal principles were used, or (3) if

his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010). Because this issue is before us pursuant to a Government appeal, we may act only with respect to matters of law. Article 62(b), UCMJ, 10 U.S.C. § 862(b). We may not make findings of fact, as we are limited to determining whether the military judge's factual findings are clearly erroneous or unsupported by the record. *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995). "If the findings are incomplete or ambiguous, the 'appropriate remedy . . . is a remand for clarification' or additional findings." *Id.* (quoting *United States v. Kosek*, 4 M.J. 60, 64 (C.M.A. 1994)).

*Analysis*

The ultimate issue before us is whether the military judge abused his discretion by abating the proceedings. The military judge found "evidence of central importance" was included within the approximately 3,500 documents being withheld by the Government on the basis of attorney-client and related privileges. He abated the proceedings when the Government declined to produce the documents pursuant to the court's order. Under the unique circumstances of this case, we find the military judge's ruling incomplete and ambiguous in that he abated the proceedings without taking sufficient actions to define what materials were appropriate for in camera review. Because the military judge's findings are incomplete and ambiguous, we remand for clarification and action consistent with this opinion.

The military judge issued a wide-ranging discovery order in this case. Despite the Government's earlier representation that it would complete a privilege log, it broadly asserted privilege over the majority of the documents *in toto* without describing what these documents were, why they were covered by Mil. R. Evid. 502 or some other privilege, or whether portions of the documents were not privileged. The military judge accepted the Government's broad claims of privilege without requiring the Government to detail what the documents were or exactly what privilege was claimed over which document. The military judge initially ordered the Government to disclose all responsive documents directly to the defense. Later, he stated he would review the documents over which the government claimed privilege in camera; however, he stated he would do so "reluctantly."

Normally, in camera review is an appropriate mechanism to resolve competing claims of privilege and right to review information. R.C.M. 703(f)(4)(C); *United States v. Zolin*, 491 U.S. 554, 569 (1989) (noting the Court "has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection, and th[is] practice is well established in the federal courts"). Pursuant to *United States v. Romano*, 46 M.J. 269, 274 (C.A.A.F. 1997), and *United States v. Bowser*, 73 M.J. 889 (A.F. Ct. Crim. App. 2014), the Government does not suffer a cognizable harm to a privilege it holds merely because the military judge orders documents to be produced for in camera review. However, in camera review is

not automatically appropriate every time one party seeks information over which another claims privilege. In *United States v. Klemick*, 65 M.J. 576 (N.M. Ct. Crim. App. 2006), our sister service court held the military judge did not err in granting a Government motion to compel production of psychotherapist-patient records of a servicemember's wife for in camera review and then releasing a portion of those records to the parties. The court stated that "the threshold for *in camera* review was a showing by the moving party of 'a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative to other evidence available.'" *Id.* at 579–80 (quoting *Wisconsin v. Green*, 646 N.W.2d 298, 303 (Wis. 2002)). A similar test is appropriate here; in other words, the military judge should determine whether a sufficient factual basis exists demonstrating a reasonable likelihood that the documents over which the Government claimed privilege contained information necessary to his determination of the defense's unlawful command influence motion. *See also Zolin*, 491 U.S. at 572 ("[T]he judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish a claim that [an exception to privilege] applies.")

Applying this test, we find the military judge has not adequately developed the record as to whether the defense provided sufficient facts demonstrating a reasonable likelihood that the records contain relevant, non-cumulative information, necessary for disposition of the defense's unlawful command influence motion. We reach this conclusion on two bases.

First, the military judge did not specifically identify how the defense had raised some evidence of unlawful command influence. His first ruling broadly discussed concerns with the transfer of this case for a second disposition despite the fact that no new evidence had been produced. He did not sufficiently discuss any specific actions he believed constituted some evidence of unlawful command influence or who was allegedly influenced by these actions. Instead, the military judge summarily concluded that "[t]he Accused has raised a colorable claim of unlawful command influence before this Court in a separate motion." However, in that same ruling, he wrote, "There is, at present, no indication that there is a knowing or intentional injection of unlawful command influence." Later, after the Government introduced detailed affidavits and stipulations of expected testimony from numerous officials disavowing any unlawful influence in this case, the military judge again found the defense made a colorable showing of unlawful command influence. He cited the unusual action of transferring the case to a new convening authority after the first GCMCA declined to refer charges, the lack of any evidence of deficiencies in the first Article 32, UCMJ, report, and the comments allegedly made by Lt Gen Harding to Col Bialke. However, he did not clearly specify what action he believed constituted some evidence of unlawful command influence, how that action might have impacted this case, or who might have been influenced by these actions, particularly in light of the Government's numerous affidavits and stipulations of expected testimony. To the extent that the military judge's order

rested on concerns of apparent, rather than actual, unlawful command influence, the military judge did not clearly spell out how these actions might have caused "an objective, disinterested observer, fully informed of all the facts and circumstances, [to] harbor a significant doubt about the fairness of the proceeding." *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

Second, the military judge did not consider other methods of determining whether specific documents might contain relevant information to the defense's unlawful command influence claim, such as requiring the Government to categorize or catalog the responsive documents. Had the military judge required the Government to categorize or catalog the responsive documents (including to/from information, the date of a document, a brief description of the document's subject, and an assertion as to why each document was privileged), he might have concluded that only a subset of the documents were relevant to the defense's unlawful command influence motion. He also might have determined that some of the documents at issue were not privileged or that an exception to the privilege applied. Given the number of responsive documents and the breadth of the military judge's discovery order, further screening by the military judge would likely have uncovered further information from which the military judge and this court could evaluate the claim of privilege, the existence or non-existence of any exception to the privilege, and the relevance of the documents to any matter at issue in the case such as possible unlawful command influence. An order to simply produce the documents to opposing counsel without the military judge taking a more active role in screening the responsive documents is problematic based on the facts of this case.

The military judge could have addressed the Government's concern about releasing documents for in camera review by directing the Government to complete a privilege log, as it had earlier agreed to do.[11] A privilege log is a common method used in civil litigation to balance a party's right to discovery with another party's claim of privilege within the requested information. *See* FED. R. CIV. P. 26(b)(5).[12] In creating this rule, the drafters noted: "Although the person from whom the discovery is sought decides whether to claim a privilege or protection, the court ultimately decides whether, if this claim is challenged, the privilege or protection applies. Providing information pertinent to the applicability of the privilege or protection should reduce the need for *in camera* examination of the documents." 1993 Advisory Committee's Note on FED. R. CIV. P. 26(b)(5). While this rule applies to civil litigation, this or a similar process would

---

[11] As part of its original discovery request in March 2014, the defense requested that trial counsel create a "privilege/non-disclosure log" for any responsive documents which the Government did not consider discoverable due to relevance, privilege, or some other justification, so this log could be presented to the military judge for inspection and a judicial determination of discoverability. In its response, trial counsel agreed to create and provide such a log; however, there is no indication in the record that a log was created.

[12] "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5).

have greatly aided in clarifying the military judge's ruling and in defining the scope of the issue before us. Requiring the Government to complete a privilege log and then making specific findings about which documents are appropriate for in camera review would more precisely identify what documents are at issue, why in camera review is or is not necessary, and whether the Government has properly asserted privilege.

The military judge acknowledged the problem created by the Government's generalized assertion of privilege when he noted that not every communication between an attorney and a client is privileged, and stated that "[b]ecause the Government has asserted a broad privilege rather than seek an in camera review, this Court cannot properly ascertain which documents are privileged." Instead of delving into this issue further, the military judge simply abated the proceedings until "the Government rescinds [sic] the privilege."

In light of this, we find the military judge's ruling is incomplete and ambiguous in that he abated the proceedings without taking sufficient steps to define what materials were appropriate for in camera review. We stress three points concerning the limited scope of this ruling. First, we do not hold that the military judge may not later abate the proceedings if he ultimately orders in camera review of any documents and the Government nonetheless fails to comply with that order. As we stated in *Bowser*, after a military judge makes an initial determination that a review is necessary, in camera review is typically an appropriate mechanism to make judicial decisions about privilege. Second, we do not hold that military judges must follow the process we have outlined here in every case that may require in camera review of materials over which a privilege is asserted. Rather, we hold that in this unique case involving voluminous materials, numerous sources of correspondence, broad assertions of privilege, and vague threshold findings, the military judge should have considered the viability of other options to narrow the scope of the dispute before abating the proceedings. If the military judge follows the process outlined above or another appropriate process designed to clarify the his ruling regarding the assertion of privilege and the relevancy of the material sought, any reviewing court will have a clearer ruling to review. This would also introduce a higher level of rigor to the analysis, helping to ensure the military judge does what military judges do less formally in most cases involving in camera review of materials over which privilege is asserted: determine the scope of the responsive materials, define what privilege is being asserted over which documents, and conclude what materials must be reviewed in camera to resolve the issue. Third, although the abuse of discretion standard normally provides trial judges with a significant degree of deference, a military judge abuses his or her discretion when he or she uses incorrect legal principles. *Ellis*, 68 M.J. at 344. Based on the limited record and the ambiguous ruling before us, we cannot conclude that the military judge's decision to abate the proceedings was based on appropriate legal principles. The military judge failed to clearly set forth his rationale for determining the applicability of any privilege, what documents may be appropriate for in camera review, and the relevance of any materials at issue. Further development of the

record, perhaps using the suggestions we provide, will enable meaningful appellate review of any future abatement order or other remedy.

Today's ruling only addresses what is required before the military judge orders in camera review of these materials. In the event the military judge requires disclosure of materials to the defense after in camera review, the Government may elect at that point to pursue its options to raise this matter for this court's consideration.

*Conclusion*

On consideration of the appeal by the United States under Article 62, UCMJ, it is by the court on this 13th day of January 2015,

**ORDERED:**

The appeal of the United States under Article 62, UCMJ, is hereby **GRANTED** in that the military judge failed to take sufficient steps to define what materials were appropriate for in camera review before ordering abatement. The record of trial is returned to the military judge for clarification and action consistent with this opinion. We make no ruling as to the issue of whether the defense is entitled to receive any of the communications at issue pursuant to its unlawful command influence motion. After the military judge takes sufficient steps to define what materials are appropriate for in camera review and conducts this review, if he orders materials provided to the defense, the Government may either comply with the order or appeal any subsequent order for abatement or other remedy within this court's jurisdiction to review.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist