# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**Misc. Dkt. No. 2023-11**

———————————

**In re SC**
*Petitioner*

**Janelle M. RAMSEY**
Technical Sergeant (E-6), U.S. Air Force
*Real Party in Interest*

———————————

Review of Petition for Extraordinary Relief in the Nature of
a Writ of Mandamus

Decided 12 December 2023

———————————

*Military Judge*: Thomas A. Smith.

*GCM convened at*: Laughlin Air Force Base, Texas.

*For Petitioner:* Captain Eric Trudrung, USAF.

Before JOHNSON, CADOTTE, and MASON, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge CADOTTE and Judge MASON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

On 14 November 2023, pursuant to Article 6b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b,[1] and Rule 19 of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, JT. CT. CRIM. APP. R. 19, Petitioner requested: (1) this court issue an immediate stay of an order by the military judge in the pending general court-martial of the Real Party in Interest (RPI) identified above; and (2) "time to supplement [her] Petition with further briefing by 21 November 2023." On 17 November 2023, this court denied Petitioner's request for an immediate stay of the military judge's order and granted Petitioner's request to supplement her petition with additional filings by 21 November 2023. On 21 November 2023, Petitioner filed a supplemental brief in support of her petition, requesting this court vacate the military judge's order and require the military judge to "appropriately recognize any production of mental health records requires [a Military Rules of Evidence [Mil. R. Evid.)] 513(e) hearing and that the [Department of Defense] Health Record is subject only to the rules and process of [Rule for Courts-Martial (R.C.M.)] 703 when seeking disclosure of non-privileged records."

Having considered the petition and the matters attached thereto, we deny the petition.

## I. BACKGROUND

The petition and its several attachments indicate the following sequence of events.

On 1 June 2023, the convening authority referred for trial by general court-martial three specifications of abusive sexual contact and one specification of assault consummated by a battery in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928, allegedly committed by the RPI. SC is the alleged victim of one of the Article 120, UCMJ, specifications. The alleged victim of the remaining specifications is SB, who has filed a separate petition with this court that essentially mirrors Petitioner's which we address in a separate opinion.

On 27 August 2023, the Defense moved the trial court "to be permitted to question [Petitioner] and other witnesses about [Petitioner's] mental health information, diagnoses, and treatment history, and to obtain access to her associated mental health records." Petitioner (through counsel) and the Government opposed the defense motion on 3 and 5 September 2023, respectively.

---

[1] References in this opinion to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.). References to the non-punitive articles of the UCMJ, the Rules for Courts-Martial, and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2023 ed.).

Although Petitioner has not provided a ruling from the military judge on the defense motion, on 18 October 2023 trial counsel advised the military judge via email that the "Government is still seeking to provide responsive information to the Defense's [Mil. R. Evid.] 513 motion," and requested the military judge "provide a written court order to provide with a subpoena to [the Defense Health Agency (DHA)] for the mental health information." In response, the military judge asked trial counsel to prepare a draft order for the military judge's review. Trial counsel did so, and the military judge provided signed orders regarding Petitioner and SB to trial counsel on 30 October 2023. Trial counsel apparently provided revised versions of the draft orders dated 3 November 2023 for the military judge to sign. On 9 November 2023, trial counsel reported to the military judge via email that the Government had "served court orders and subpoenas on the 47th Medical Group [(47 MDG)]" located at Laughlin Air Force Base, Texas.

Although Petitioner has not provided this court with a signed version of the military judge's order, for purposes of our analysis we will assume (as Petitioner evidently does) the military judge issued a signed order substantially similar to the 3 November 2023 draft order attached to the petition. The order indicates that on 30 October 2023, the military judge granted a motion by trial counsel "to compel the production of '[a]ll mental health disorder diagnoses, treatment and prescriptions' related to [Petitioner]." The order directs the DHA, the 47 MDG, another Air Force medical group, and any subordinate clinics to "produce" any records they maintained related to Petitioner's "mental health diagnosis or diagnoses," "[a]ny treatment or treatment plan for such diagnosis or diagnoses," and "[a]ny prescriptions related to such diagnosis or diagnoses." (Emphasis omitted). The draft order directed that the "appropriate medical professional, in coordination with the medical law attorney[,] will ensure any responsive records are redacted of all information not specifically identified" by the order. In particular, the order stated "[n]one of the responsive records should include confidential communications between [Petitioner] and any psychotherapist." (Emphasis omitted) (first citing Mil. R. Evid. 513; and then citing *United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022)), *cert. denied*, 143 S. Ct. 2637 (2023). The order noted the trial was scheduled to begin on 4 December 2023, and directed "the responsive and redacted records must be provided to the prosecuting attorneys in a sealed envelope by 14 November 2023."

## II. DISCUSSION

### A. Law

The All Writs Act, 28 U.S.C. § 1651(a), grants a Court of Criminal Appeals (CCA) "authority to issue extraordinary writs necessary or appropriate in aid

of its jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005)). The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (citations omitted). In order to prevail on a petition for a writ of mandamus, the petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004)); *see also In re KK*, ___ M.J. ___, Misc. Dkt. No. 2022-13, 2023 CCA LEXIS 31, at *10 (A.F. Ct. Crim. App. 24 Jan. 2023) (holding traditional mandamus standard of review applicable to Article 6b(e), UCMJ, petitions). A writ of mandamus "is a 'drastic instrument which should be invoked only in truly extraordinary situations.'" *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983)).

Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1), states:

> If the victim of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4), the victim may petition the [CCA] for a writ of mandamus to require the . . . court-martial to comply with the section (article) or rule.

Article 6b(e)(4), UCMJ, provides that this right to petition the CCA for a writ of mandamus applies with respect to protections afforded by, *inter alia*, Article 6b, UCMJ, and Mil. R. Evid. 513.

Article 6b(a)(8), UCMJ, provides that the victim of an offense under the UCMJ has, among other rights, "[t]he right to be treated with fairness and with respect for the dignity and privacy of the victim . . . ."

"After service of charges, upon request of the defense, the Government shall permit the defense to inspect any . . . papers, documents, [or] data . . . if the item is within the possession, custody, or control of military authorities and [ ] the item is relevant to defense preparation." R.C.M. 701(a)(2)(A)(i). "The military judge may, consistent with [R.C.M. 701], specify the time, place, and manner of making discovery and may prescribe such terms and conditions as are just." R.C.M. 701(g)(1).

Mil. R. Evid. 513(a) provides that, in general:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the

psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

"Before ordering the production or admission of evidence of a patient's records or communication, the military judge must conduct a hearing, which shall be closed. . . . The patient must be afforded a reasonable opportunity to attend the hearing and be heard." Mil. R. Evid. 513(e)(2). The rule defines "[e]vidence of a patient's records or communications" as "testimony of a psychotherapist, or assistant to the same, or patient records that pertain to communications by a patient to a psychotherapist, or assistant to the same, for the purposes of diagnosis or treatment of the patient's mental or emotional condition." Mil. R. Evid. 513(b)(5). "The military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." Mil. R. Evid. 513(e)(3). Mil. R. Evid. 513(d) enumerates several exceptions to the psychotherapist-patient privilege.

In *Mellette*, the United States Court of Appeals for the Armed Forces (CAAF) held "diagnoses and treatments contained within medical records [including mental health records] are not themselves uniformly privileged under [Mil. R. Evid.] 513." 82 M.J. at 375. The CAAF explained, "[t]he phrase 'communication made between the patient and a psychotherapist' [in Mil. R. Evid. 513(a)] does not naturally include other evidence, such as routine medical records, that do not memorialize actual communications between the patient and the psychotherapist." 82 M.J. at 378.

## B. Analysis

Petitioner asserts that, in issuing the order to produce certain of her mental health records, the military judge erred in three general respects: (1) failing to hold a hearing as required by Mil. R. Evid. 513; (2) failing to apply the process and procedures required by R.C.M. 703(g)(3); and (3) issuing an order outside the scope of the military judge's authority. We are not persuaded Petitioner has clearly and indisputably demonstrated she is entitled to relief on any of these bases. *See Hasan*, 71 M.J. at 418. We address each of Petitioner's general contentions in turn.[2]

---

[2] We note that at certain points, Petitioner's supplemental brief contains language that could be read to imply motives on the part of the military judge other than a good-faith application of the law, and may be read to disparage "the military justice system." Such flourishes have no influence on the court's resolution of the issues. However, although the court expects and appreciates robust advocacy on behalf of clients, counsel are

**1. Mil. R. Evid. 513**

Petitioner suggests the military judge's order directed disclosure of privileged material to a third party in violation of Mil. R. Evid. 513; we are not persuaded. Petitioner asserts the military judge "suggested to Government Counsel to consider the use of a 'taint' attorney as a method of redacting the 'privileged' from the non-privileged information; nevertheless, the production of records to this third-party constitutes a disclosure under [Mil. R. Evid.] 513(a)." Petitioner contends the military judge thereby "divested himself of any responsibility to abide by [Mil. R. Evid.] 513 and made the government counsel devise a creative solution to get to the 'non-privileged Mellette Records.'" However, Petitioner inaccurately characterizes the military judge's order. The military judge directed "[t]he appropriate medical professional, in coordination with the medical law attorney," to ensure the records produced were redacted of material outside the scope of the order. Under the circumstances, a fair reading of "the appropriate medical professional" would mean one who currently has lawful custody of or access to the records. Moreover, the military judge did not require any attorney to review the records, only that the medical professional redact the responsive records "in coordination" with a "medical law attorney." We are not persuaded requiring a current custodian of the records to review them for purposes of complying with court-martial discovery or production is a "disclosure" of those records for purposes Mil. R. Evid. 513; nor are we persuaded that having such a custodian receive legal advice in order to lawfully comply with their obligations is a "disclosure" for such purposes.

Petitioner next argues Mil. R. Evid. 513(e)(2) required the military judge to hold a hearing before ordering the production of records related to her mental health diagnoses. She notes the rule defines "evidence of a patient's records or communications" as "testimony of a psychotherapist, or assistant to the same, or patient records *that pertain to* communications by a patient to a psychotherapist, or assistant to the same, for the purposes of diagnosis or treatment of the patient's mental or emotional condition." Mil. R. Evid. 513(b)(5) (emphasis added). Petitioner reasons that because interviewing the patient is part of the preferred practice for making mental health diagnoses, "patient records of a mental health diagnosis will pertain to [privileged] communications." However, this is not the interpretation of Mil. R. Evid. 513 adopted in *Mellette*, where the CAAF explained:

---

reminded of their obligation to "use language that is respectful of courts or tribunals [and] the system of justice." Air Force Instruction 51-110, *Professional Responsibility Program*, Attachment 2, *Air Force Standards for Civility in Professional Conduct*, ¶ 24; *see also* A.F. CT. CRIM. APP. 10.1 (requiring counsel before this court to comply with Air Force Standards for Civility in Professional Conduct).

> A patient's diagnosis and the treatment that a patient received to care for those conditions are "underlying facts," [ ] not confidential communications. Although [Mil. R. Evid.] 513(a) prevents a witness from being required to disclose the substance of the communications between a patient and a psychotherapist, it does not extend to all evidence that might reveal a patient's diagnoses and treatments.

82 M.J. at 380 (citation omitted). Thus, *Mellette* necessarily implies some mental health records *may* reveal a patient's diagnosis without "pertaining to" protected communications within the meaning of Mil. R. Evid. 513(b)(5). The military judge's order explicitly cited *Mellette* and excluded "confidential communications between [Petitioner] and any psychotherapist." In other words, the order was specifically crafted to exclude production of material privileged under Mil. R. Evid. 513 as defined by *Mellette*. Because the order excluded—at least facially—Mil. R. Evid. 513 privileged communications as defined by the CAAF, the military judge did not clearly and indisputably err by not holding a Mil. R. Evid. 513(e)(2) hearing.

Petitioner contends that distinguishing privileged from non-privileged material is a "judicial function[ ]" that "should not [be] delegate[d] . . . to the trial counsel or some unknown entity unaccountable to [the judge's] judicial oversight." It is true that "[n]ormally, in camera review is an appropriate mechanism to resolve competing claims of privilege and right to review information." *United States v. Wright*, 75 M.J. 501, 510 (A.F. Ct. Crim. App. 2015) (citations omitted). However, Mil. R. Evid. 513 does not mandate in camera review to distinguish privileged and non-privileged mental health records. Instead, Mil. R. Evid. 513(e)(3) provides "[t]he military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications," but only after the military judge finds by a preponderance of the evidence the moving party demonstrates four conditions are met. Thus, several significant qualifiers or criteria apply when a party seeks in camera review under these circumstances. First, by using the term "may," the rule *permits* (under certain circumstances) rather than *requires* in camera review. Second, the military judge may conduct in camera review if such review is "necessary" to make a ruling. Third, the ruling in question is one that relates to the "production or admissibility *of protected records or communications*," presumably pursuant to an exception to the privilege; in the instant case, the military judge's order excluded rather than directed production of *protected* records or communications. Fourth, the moving party must show the four conditions of Mil. R. Evid. 513(e)(3)(A)–(D) have been met, including "that the requested information meets one of the enumerated exceptions under [Mil. R. Evid. 513(d)]." Given these qualifiers and conditions, under the applicable standard of review for mandamus relief, we

are not persuaded Petitioner has demonstrated she is entitled to relief for the military judge's failure to conduct in camera review.

Finally, Petitioner contends the language of *Mellette* itself "seems to allude" to the requirement to apply Mil. R. Evid. 513(e) procedures before the production of non-privileged evidence of mental health treatment and diagnoses. Petitioner quotes the CAAF:

> Before trial, Appellant filed a motion to compel production and in camera review of "[the patient's] mental health records: to include the dates visited said mental health provider, the treatment provided and recommended, and her diagnosis." . . . To the extent that these documents existed—and were otherwise admissible under the Military Rules of Evidence and the Rules for Courts-Martial—they *should have been produced or admitted subject to the procedural requirements of M.R.E. 513(e).*

*Mellette*, 82 M.J. at 381 (emphasis added). However, the CAAF's language must be read in the context of that case. In *Mellette*, the defense at trial sought production of records that the Government argued, and the military judge held, *were* subject to the Mil. R. Evid. 513 privilege. *Id.* at 376. Therefore, it was a "case in which the production or admission of records or communications of a patient" was "a matter in dispute," Mil. R. Evid. 513(e)(1), which directly implicated Mil. R. Evid. 513(e) procedures. In contrast, the instant case involves an order that—at least facially—specifically excludes privileged "records or communications of a patient" as defined by Mil. R. Evid. 513(b)(5) and interpreted by *Mellette*.

For the foregoing reasons, we find Petitioner has not demonstrated a clear and indisputable right to relief on the basis that the military judge ordered production of privileged material without following procedures required by Mil. R. Evid. 513.

### 2. Application of R.C.M. 701 and R.C.M. 703

Petitioner makes several arguments to the general effect that the military judge erred by treating her health records maintained by Air Force medical groups as "within the possession, custody, or control of military authorities" and therefore subject to discovery under R.C.M. 701(a)(2), without the procedures required for production of "[c]ivilians and witnesses not under the control of the Government" under R.C.M. 703(g)(3). We have carefully considered Petitioner's arguments; not all of them require discussion, but we address the most significant points below.

As an initial matter, we note the military judge's specific rationale for issuing the order is not in the record before us. The attachments to the petition imply the military judge may have given some direction to trial counsel to

obtain the records in question, leading trial counsel to request an order from the military judge in support of their subpoena to the 47 MDG. However, we do not have a ruling from the military judge on the Defense's motion regarding Petitioner's mental health records. Nevertheless, it is apparent the military judge ordered the medical groups to provide the subject records to trial counsel without applying the procedures described in R.C.M. 703(g)(3), and we can address the petition on that basis.

Petitioner presumes the military judge found her health records maintained by the Air Force medical groups were "within the possession, custody, or control of military authorities" under R.C.M. 701(a)(2). She contends this interpretation is contrary to the "plain meaning" of the term "military authorities," which she argues should be understood to refer specifically to "military law enforcement officials." We disagree. This court addressed a similar argument in an Article 6b, UCMJ, petition in *In re HVZ*, Misc. Dkt. No. 2023-03, 2023 CCA LEXIS 292 (A.F. Ct. Crim. App. 14 Jul. 2023) (unpub. op.), *rev. granted*, ___ M.J. ___, 2023 CAAF LEXIS 651 (C.A.A.F. 13 Sep. 2023). In that case, the military judge specifically found the requested medical records and non-privileged mental health records maintained by an Air Force medical treatment facility were within the possession, custody, and control of military authorities under R.C.M. 701(a)(2)(B). *Id.* at *4. This court found "the military judge did not clearly and indisputably err by concluding that Petitioner's records 'maintained' by the [medical group]—a unit within the United States Air Force—were within the 'possession, custody, or control' of a 'military authority.'" *Id.* at *13. We reach a similar conclusion here. Contrary to Petitioner's argument, the "plain meaning" of "military authority" would seem to include an Air Force medical group operating on Laughlin AFB, *see id.* at *16, and Petitioner's arguments to the contrary are unpersuasive.

Petitioner further argues that in accordance with the Health Insurance Portability and Accountability Act (HIPAA), Public Law 104-191, trial counsel's request for her mental health records from the 47 MDG was unauthorized. Petitioner is correct that HIPAA applies to medical records under the control of military treatment facilities. However, as this court has explained before, HIPAA does not necessarily prohibit trial counsel from obtaining medical records from a military treatment facility without the patient's authorization. On the contrary, HIPAA, its implementing regulations, Article 46, UCMJ, 10 U.S.C. § 846, and R.C.M. 703(g)(2), in combination appear to permit such disclosure under certain conditions for a legitimate law enforcement purpose. *See In re AL*, Misc. Dkt. No. 2022-12, 2022 CCA LEXIS 702, at *15 (A.F. Ct. Crim. App. 7 Dec. 2022) (order), *pet. granted in part*, 83 M.J. 254 (C.A.A.F. 2023).

More significantly in this case, Department of Defense Manual (DoDM) 6025.18, *Implementation of the Health Insurance Portability and*

*Accountability Act (HIPAA) Privacy Rule in DoD Health Care Programs* (13 Mar. 2019), implementing HIPAA within the Department of Defense (DoD), provides at ¶ 4.4.e.(1)(a) that a "DoD covered entity may disclose PHI[3] in the course of any judicial or administrative proceeding [ ] [i]n response to an order of a court or administrative tribunal, provided that the DoD covered entity discloses only the PHI expressly authorized by such order." For disclosures under this provision, the DoDM does not require specific notification or an opportunity for the subject of the PHI to respond. In the instant case, trial counsel's subpoena was accompanied by the military judge's order, which brings it under this provision.[4]

Accordingly, we find Petitioner has not demonstrated a clear and indisputable right to relief on the basis the military judge erred by failing to apply the procedures specified R.C.M. 703(g)(3), or their equivalent.

### 3. Military Judge's Authority to Issue Production Order

In addition to the preceding arguments, Petitioner contends the military judge's order to the medical groups was simply beyond the scope of his authority. Petitioner quotes *United States v. Weiss*, where our superior court explained, "To the extent that [military judges] perform judicial duties such as authorizing searches and reviewing pretrial confinement, their authority is not inherent but is either delegated or granted by executive order." 36 M.J. 224, 228 (C.M.A. 1992) (citations omitted). Petitioner argues military judges have "authority over courts-martial proceedings, including the parties, but not over all [Department of Defense] entities and servicemembers," and in the instant case the 47 MDG was "an entity not part of the military justice proceedings." Of course, the United States is a party to the pending court-martial; but it is unnecessary for us to conclude (and we do not conclude) the military judge has broad or inherent authority over federal agencies in order to resolve the instant petition. Instead, R.C.M. 701(g)(1)—established by executive order—authorizes the military judge to, "consistent with [R.C.M. 701], specify the time, place, and manner of making discovery and may prescribe such terms and conditions as are just." Under the standards applicable to mandamus relief, we find the military judge's specific authority to control discovery under R.C.M. 701(g)(1) broad enough to encompass the military judge's order to the medical groups,

---

[3] "PHI" is defined as "[i]ndividually identifiable health information that is transmitted or maintained by electronic or any other form or medium." DoDM) 6025.18, App G.2.

[4] DoDM 6025.18 ¶ 4.4.e.(1)(b) permits disclosure "[i]n response to a subpoena, discovery request, or other lawful process that is not accompanied by an order of a court or administrative tribunal," provided certain conditions identified in it are met, including the provision of notice to the subject of the PHI and an opportunity to object. See id. at ¶ 4.4.e.(1)(b).

such that Petitioner has failed to demonstrate her clear and indisputable right to relief.

Petitioner additionally challenges "the inherent assumption in the order that the Military Judge could order a non-party, 'medical law attorney' to look at and redact [Petitioner's] privileged mental health records." However, Petitioner again inaccurately characterizes the order. As discussed *supra*, the order does not require a "non-party" attorney to review or redact the records; fairly read, it requires a records custodian to review and redact the records with the benefit of legal advice, which does not necessarily require a "disclosure" for purposes of Mil. R. Evid. 513. This is not a situation where the military judge ordered an individual otherwise without access to privileged information to review the privileged information, and for purposes of ruling on the petition we decline to assume the responsible individuals will fail to abide by the order, Mil. R. Evid. 513, or any other applicable legal authority.

Accordingly, we are not persuaded Petitioner has demonstrated the military judge's order was clearly and indisputably beyond his authority.

### III. CONCLUSION

Petitioner's petition for extraordinary relief in form of writ of mandamus is **DENIED**.[5]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[5] Our ruling should be understood within the limited and specific context of a petition for mandamus relief pursuant to Article 6b, UCMJ, and not as any broader indorsement of the military judge's course of action. As this court has stated before, we emphasize that "our conclusion that Petitioner has not met her burden to demonstrate her clear and indisputable right to mandamus relief 'is not a decision as to whether, in other forums and under ordinary standards of review, Petitioner would be entitled to relief.'" *In re HVZ*, unpub. op. at \*16 n.4 (quoting *In re AL*, unpub. order at \*14 n.3).