*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

––––––––––––––

### UNITED STATES
Appellee

**v.**

### Rodney B. BOYCE, Airman
United States Air Force, Appellant

### No. 16-0546
Crim. App. No. 38673

Argued December 7, 2016—Decided May 22, 2017

Military Judge: Christopher F. Leavey

For Appellant: *James S. Trieschmann Jr.*, Esq. (argued); *Captain Annie W. Morgan* (on brief); *Major Michael A. Schrama*.

For Appellee: *Major Thomas J. Alford* (argued); *Colonel Katherine E. Oler* and *Gerald R. Bruce*, Esq. (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN and Judge SPARKS joined. Judge STUCKY filed a separate dissenting opinion. Judge RYAN also filed a separate dissenting opinion.

––––––––––––––

Judge OHLSON delivered the opinion of the Court.

Contrary to Appellant's pleas, a military panel with enlisted representation sitting as a general court-martial convicted Appellant of one specification of rape on divers occasions and two specifications of assault consummated by a battery in violation of Articles 120 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928 (2012). The panel acquitted Appellant of one specification of rape and two specifications of assault.

The panel sentenced Appellant to a reduction in grade to E-1, forfeiture of all pay and allowances, and confinement for four years. The military judge ruled that the convening authority could not approve the reduction in grade. Pursuant to that ruling, the convening authority approved only so much of the adjudged sentence as extended to the forfeiture and confinement. The United States Air Force Court of

Criminal Appeals affirmed the findings and granted a six day credit[1] against the sentence in Appellant's case.

We granted review of the following issue:

> The Chief of Staff of the Air Force advised the convening authority that, unless he retired, the Secretary of the Air Force would fire him. Was the convening authority's subsequent referral of charges unlawfully influenced by the threat to his position and career?

*United States v. Boyce*, 75 M.J. 402, 402–03 (C.A.A.F. 2016).

Following our review of the entire record, we conclude that an objective disinterested observer with knowledge of all the facts and circumstances would harbor a significant doubt about the fairness of the court-martial proceedings and therefore conclude that there is the appearance of unlawful command influence in this case. We therefore reverse the findings and the sentence in this case without prejudice and return the case to the Judge Advocate General with a rehearing authorized.

## I. Background

The underlying facts leading to the charges and convictions in this sexual assault case are not directly relevant to the issue before us. We therefore proceed only with a recitation of those facts that are pertinent to the unlawful command influence allegation.

During the relevant time period, Lieutenant General (Lt Gen) Craig A. Franklin was the commander of the Third Air Force. On February 26, 2013, Lt Gen Franklin used his clemency authority under Article 60, UCMJ, 10 U.S.C. § 860 (2012), to set aside the findings and sentence in the unrelated case of *United States v. Wilkerson*. Wilkerson was a lieutenant colonel (Lt Col) in the Air Force and had been convicted at court-martial of aggravated sexual assault. Lt Gen Franklin's decision to set aside Wilkerson's conviction was

---

[1] One day of credit was for the reprimand Appellant received as nonjudicial punishment for a crime that he was later convicted of committing at his court-martial. The other five days of credit were for excessive post-trial delay without the showing of actual prejudice.

against the advice of his Staff Judge Advocate (SJA), Colonel (Col) Joseph Bialke, who recommended clemency in the form of an adjusted sentence.

In a March 12, 2013, letter to then-Secretary of the Air Force Michael B. Donley, Lt Gen Franklin sought to explain his decision in the *Wilkerson* case. He wrote:

> Obviously it would have been exceedingly less volatile for the Air Force and for me professionally, to have simply approved the finding of guilty. This would have been an act of cowardice on my part and a breach of my integrity. As I have previously stated, after considering all matters in the entire record of trial, I hold a genuine and reasonable doubt that Lt Col Wilkerson committed the crime of sexual assault.

Also on March 12, 2013, General (Gen) Mark A. Welsh III, who recently had been promoted to Chief of Staff of the Air Force, e-mailed Lt Gen Franklin, writing: "It's going to be a little uncomfortable for awhile. Hang in there."

Lt Gen Franklin's clemency action garnered considerable negative attention from Congress and the media.[2] However, despite this backlash, Lt Gen Franklin continued to defend his *Wilkerson* decision. Indeed, he later tried to intervene on behalf of then-Lt Col Wilkerson in order to have his promotion to colonel approved upon his release from confinement.

In a different case addressing sexual assault, *United States v. Oropeza*, Lt Gen Franklin explained his thought process prior to dismissing the charges in the *Wilkerson* case as follows:

> Yes, I thought about [my career advancement in the military] just knowing that this was probably going to get Congressional interest and the Senate, who confirms GOs [general officers] for Three and Four Star billets, so whether or not I was going to go to another Three-Star Billet after this job, or maybe get a Four-Star billet, you know, I knew this would probably make this my last job potentially, so yeah, I knew this was going to have probably [sic] future impact on me.

---

[2] A member of the Senate Armed Services Committee commented on Lt Gen Franklin's decision to set aside the findings and sentence against Wilkerson, saying that commanders need to be held "accountable" for overturning sexual assault convictions.

When asked if he had any regrets about his decision because of the subsequent political "fallout," Lt Gen Franklin replied, "No, I'll tell you I am sleeping like a baby at nighttime. I made the right decision even amidst all the attacks."

On September 3, 2013, Lt Gen Franklin declined to refer charges against an airman in the case of *United States v. Wright*. This was done prior to trial and consistent with the recommendation of his SJA, Col Bialke. The charges in that case also involved sexual assault allegations. *See* 75 M.J. 501, 502 (A.F. Ct. Crim. App. 2015) (en banc). Shortly after Lt Gen Franklin dismissed the charges and specifications, then-Judge Advocate General of the Air Force, Lt Gen Richard Harding, called Col Bialke regarding the *Wright* case. *Id.* at 503. Col Bialke said that Lt Gen Harding told him: "the failure to refer the case to trial would place the Air Force in a difficult position with Congress; absent a 'smoking gun,' victims are to be believed and their cases referred to trial; and dismissing the charges without meeting with the named victim violated an Air Force regulation." *Id.*

On December 20, 2013, Deborah Lee James was appointed as Secretary of the Air Force. On December 23, 2013, Lt Gen Franklin read what he described as an article in which a senator indicated he would be retiring soon. On December 27, 2013, the Chief of Staff of the Air Force, Gen Welsh, telephoned Lt Gen Franklin and informed him that the new Secretary had "lost confidence" in him and that he had two options: voluntarily retire from the Air Force at the lower grade of major general, or wait for the Secretary to remove him from his command in the immediate future. Three hours after this call, Lt Gen Franklin decided to retire. In his written retirement request, Lt Gen Franklin stated: "My decisions as a General Court Martial [sic] convening authority [(GCMCA)] have come under great public scrutiny," and "media attention … will likely occur on subsequent sexual assault cases I deal with."

On the same day that Lt Gen Franklin was contacted by the Chief of Staff, he received the referral package regarding Appellant's case, which included sexual assault charges. On January 6, 2014, Lt Gen Franklin referred Appellant's case to a general court-martial. Two days later he publicly an-

nounced that he would step down from his position as Third Air Force Commander on January 31, 2014, and would officially retire two months later.

On January 28, 2014, Lt Gen Franklin was interviewed by Appellant's defense counsel. The affidavit documenting this interview reflects that Lt Gen Franklin stated the following: he decided to refer Appellant's case "independently"; there "probably is an appearance of UCI [unlawful command influence] but I wasn't affected by it"; and it "would be foolish to say there is no appearance of UCI."

On February 13, 2014, the Government provided an affidavit to the trial court in response to a defense motion to dismiss all charges against Appellant due to unlawful command influence. In this affidavit, Lt Gen Franklin stated: "Any comments by superior government officials, both civilian and military, had absolutely no impact on my decision-making as a convening authority," and "I did not and would not allow improper outside influence to impact my independent and impartial decisions as a GCMCA." However, he also conceded in the affidavit that his decision in the *Wilkerson* case "has been and continues to be a subject of substantial public controversy," and noted that the charges which he had declined to refer in the *Wright* case "had been re-preferred by the Air Force District of Washington."

In ruling on the defense's motion, the military judge stated that although the defense had met its initial burden of demonstrating that there was some evidence of unlawful command influence:

> [I]t had absolutely no impact on this particular case. There could be an argument, in fact, that General Franklin may be the most bombproof of any convening authority out there simply because of … his retirement, and the fact that he has, on occasion, seemingly gone against the interests of others in the military.

In his later written ruling, the military judge stated that the "Court is convinced beyond a reasonable doubt that there was no UCI or apparent UCI in [either] the accusatorial or adjudicative phases of this proceeding." On appeal, the Air Force Court of Criminal Appeals concurred with the military judge's analysis.

## II. Applicable Law

It has long been a canon of this Court's jurisprudence that "[unlawful] [c]ommand influence is the mortal enemy of military justice."[3] *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986). "Indeed," as Chief Judge Everett noted in *Thomas*, "a prime motivation for establishing a civilian Court of Military Appeals was to erect a further bulwark against impermissible command influence." *Id.* And importantly, our Court's fulfillment of that responsibility "is fundamental to fostering public confidence in the … fairness of our system of justice." *United States v. Harvey*, 64 M.J. 13, 17 (C.A.A.F. 2006).

Two types of unlawful command influence can arise in the military justice system: *actual* unlawful command influence and *the appearance of* unlawful command influence. From the outset, actual unlawful command influence has commonly been recognized as occurring when there is an improper manipulation of the criminal justice process which negatively affects the fair handling and/or disposition of a case. *See United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991); *see also United States v. Allen*, 31 M.J. 572, 584 (N.M.C.M.R. 1990) ("Unlawful command influence … is impermissible command control."). As reflected below, however, it took decades for this Court's jurisprudence to define

---

[3] The principal statutory provision prohibiting unlawful command influence is Article 37(a), UCMJ, 10 U.S.C. § 837(a) (2012), which states in pertinent part: "No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial … or any member thereof." The Secretary of the Air Force is not a person subject to the UCMJ, and it could be argued that it was her conduct—rather than the conduct of the Chief of Staff of the Air Force—that raised the issue of unlawful command influence in this case. Nevertheless, we need not address the factual issue of who was the key actor in this case on the legal issue of whether improper influence by a civilian official not subject to the UCMJ may present a due process error of constitutional dimension, because the Government unequivocally conceded at oral argument that our jurisprudence pertaining to unlawful command influence applies in the instant case, and we deem it appropriate to accept that concession in the course of analyzing the assigned issue.

the contours of what constitutes a meritorious claim of an appearance of unlawful command influence.

Initially our Court did not differentiate between actual unlawful command influence and the appearance of unlawful command influence. Over the years, however, we have explored the distinctions between the two.

The first known acknowledgment of the impropriety of an appearance of unlawful command influence arose in 1954. In a concurring opinion in *United States v. Knudson*, 4 C.M.A. 587, 598, 16 C.M.R. 161, 172 (1954) (Brosman, J., concurring in the result), Judge Brosman wrote:

> [T]he unfortunate circumstance that the convening authority had previously and openly damned one of these functionaries as an abuser of discretion gives the conduct of the trial an especially unpleasant aroma. Viewing the record as a whole, I am fortified in my belief that *the appearance of* "command influence" is vivid enough here to require reversal.

(Emphasis added.)

The first time that a majority of the Court of Military Appeals cited an appearance of unlawful command influence as a basis for reversing the conviction of a servicemember occurred ten years later. In *United States v. Johnson*, 14 C.M.A. 548, 551, 34 C.M.R. 328, 331 (1964), the Court stated:

> In approaching a problem of this nature, the *apparent* existence of "command control," through the medium of pretrial communication with court members, is as much to be condemned as its actual existence. As a matter of principle, any doubt in the matter must be resolved in favor of the accused.

(Emphasis added.)

The Court further stated, "The *appearance*, or the existence, *of command influence* provides a presumption of prejudice." *Id*. (emphasis added).

It took another three decades for the standard that we now use in determining whether there was an appearance of unlawful command influence to emerge. Once again, it was a separate opinion that led the way. Judge Wiss stated:

> One judge even went so far as to suggest [that] "[t]he practice of ranking appellate judges should be discontinued. In the absence of specific objective criteria, *an objective, disinterested observer fully informed of the facts would entertain a significant doubt that justice was being done" and would perceive an appearance of command influence.*

*United States v. Mitchell*, 39 M.J. 131, 151 (C.M.A. 1994) (Wiss, J., concurring in part, dissenting in part, and concurring in the result) (alteration in original) (quoting *United States v. Mitchell*, 37 M.J. 903, 930 (N.M.C.M.R. 1993) (Reed, J., concurring in the result)).[4] This language was adopted in a majority opinion four years later. *See United States v. Calhoun*, 49 M.J. 485, 488 (C.A.A.F. 1998) ("[We] decline to enshrine a right to private civilian counsel paid for by the Government *unless an objective, disinterested observer, with knowledge of all the facts, could reasonably conclude that there was at least an appearance of unlawful command influence* over all military and other government defense counsel." (emphasis added)).

A further refinement of this Court's jurisprudence regarding the appearance of unlawful command influence occurred a few years later. Quoting *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979), and citing "'the spirit of the Code,'" this Court in *United States v. Stoneman* favorably cited our previous observation that "'[t]he appearance of unlawful command influence is as devastating to the military justice system as the actual manipulation of any given trial.'" 57 M.J. 35, 42 (C.A.A.F. 2002). And importantly, in *Stoneman* we more explicitly explained the distinction between actual unlawful command influence and the appearance of unlawful command influence:

> The question whether there is an appearance of unlawful command influence is similar in one respect to the question whether there is implied bias, because both are judged objectively, through the eyes of the community.... *Even if there was no actual unlawful command influence, there may be a question whether the influence of command placed an "intolerable strain on public per-*

___

[4] The Navy-Marine Corps Court of Military Review acknowledged that some of this language was adapted from the case of *United States v. Berman*, 28 M.J. 615, 616 (A.F.C.M.R. 1989).

*ception of the military justice system." See United States v. Wiesen,* 56 MJ 172, 175 (2001).

*Id.* at 42–43 (emphasis added) (citations omitted).

Chief Judge Erdmann wove together the various strands of our jurisprudence on this topic a decade ago in *United States v. Lewis*, 63 M.J. 405, 413 (C.A.A.F. 2006). In doing so, he first stated that in order for a claim of actual unlawful command influence to prevail, an accused must meet the burden of demonstrating: (a) facts, which if true, constitute unlawful command influence; (b) the court-martial proceedings were unfair to the accused (i.e., the accused was prejudiced); and (c) the unlawful command influence was the cause of that unfairness. *Id.*

Next, in regard to an appearance of unlawful command influence, Chief Judge Erdmann wrote:

> Congress and this court are concerned not only with eliminating actual unlawful command influence, but also with "eliminating even the appearance of unlawful command influence at courts-martial.*" United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979).… [T]he "'appearance of unlawful command influence is as devastating to the military justice system as the actual manipulation of any given trial.'" *Simpson*, 58 M.J. at 374 (quoting *Stoneman*, 57 M.J. at 42–43). Thus, "disposition of an issue of unlawful command influence falls short if it fails to take into consideration … the appearance of unlawful command influence at courts-martial." *Id.*

> Whether the conduct of the Government in this case created an appearance of unlawful command influence is determined objectively. *Stoneman*, 57 M.J. at 42. "Even if there was no actual unlawful command influence, there may be a question whether the influence of command placed an 'intolerable strain on public perception of the military justice system.'" *Id.* at 42–43 (quoting *United States v. Wiesen*, 56 M.J. 172, 175 (C.A.A.F. 2001)). The objective test for the appearance of unlawful command influence is similar to the tests we apply in reviewing questions of implied bias on the part of court members or in reviewing challenges to military judges for an appearance of conflict of interest. We focus upon the perception of fairness in the military justice system as viewed through the eyes of a reasonable member of the public. Thus, the appearance of un-

lawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.

*Id.* at 415 (alteration in original) (citations omitted).

As can be seen from the above, unlike actual unlawful command influence where prejudice to the accused is required, no such showing is required for a meritorious claim of an appearance of unlawful command influence.[5] Rather, the prejudice involved in the latter instance is the damage to the public's perception of the fairness of the military justice system as a whole and not the prejudice to the individual accused.[6] Consequently, consistent with Chief Judge Erdmann's opinion in *Lewis*, it is sufficient for an accused to demonstrate the following factors in support of a claim of an appearance of unlawful command influence: (a) facts, which if true, constitute unlawful command influence; and (b) this unlawful command influence placed an "intolerable strain" on the public's perception of the military justice system because "an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Id.* (internal quotation marks omitted) (citation omitted).

In light of these two factors, the following process ensues when an appellant asserts there was an appearance of un-

---

[5] A determination that an appellant was not personally prejudiced by the unlawful command influence, or that the prejudice caused by the unlawful command influence was later cured, is a significant factor that must be given considerable weight when deciding whether the unlawful command influence placed an "intolerable strain" on the public's perception of the military justice system. However, such a determination ultimately is not dispositive of the underlying issue of whether the public taint of an appearance of unlawful command influence still remains.

[6] We discern no tension between this standard and our holding in *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999), that "the alleged unlawful command influence [must have] a logical connection to the court-martial." A conclusion that there was a "logical connection" to a court-martial is not the same thing as a conclusion that there was prejudice to the individual accused. Rather, "logical connection" is merely a germaneness requirement.

lawful command influence.[7] The appellant initially must show "some evidence" that unlawful command influence occurred. *Stoneman*, 57 M.J. at 41 (internal quotation marks omitted) (citation omitted); *see also United States v. Ayala*, 43 M.J. 296, 300 (C.A.A.F. 1995) ("The quantum of evidence necessary to raise unlawful command influence is the same as that required to submit a factual issue to the trier of fact [i.e., "some evidence]."). This burden on the defense is low, but the evidence presented must consist of more than "mere allegation or speculation." *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013); *see also Allen*, 33 M.J. at 212 ("Proof of [command influence] in the air, so to speak, will not do." (internal quotation marks omitted) (citation omitted)).

Once an appellant presents "some evidence" of unlawful command influence, the burden then shifts to the government to rebut the allegation. Specifically, the government bears the burden of proving beyond a reasonable doubt that either the predicate facts proffered by the appellant do not exist, or the facts as presented do not constitute unlawful command influence. *Salyer*, 72 M.J. at 423; *see also Biagase*, 50 M.J. at 151 ("[R]egarding the quantum of proof required: once an issue of unlawful command influence is raised, the Government must persuade the military judge and the appellate courts beyond a reasonable doubt that there was no unlawful command influence or that the unlawful command influence did not affect the findings and sentence.").[8] If the government meets its burden, the appellant's claim of un-

---

[7] We review allegations of unlawful command influence de novo. *Harvey*, 64 M.J. at 19.

[8] Consistent with this Court's holding in *Biagase*, we deem it appropriate to apply a "harmless beyond a reasonable doubt" standard for both actual and apparent unlawful command influence because in the military justice system both the right to a trial that is fair, and the right to a trial that is objectively seen to be fair, have constitutional dimensions sounding in due process. *See Thomas*, 22 M.J. at 393–94 (C.M.A. 1986); *see also Rochin v. California*, 342 U.S. 165, 169 (1952) ("Regard for the requirements of the Due Process Clause 'inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings … in order to ascertain whether they offend [canons of fairness] ….").

lawful command influence will be deemed to be without merit and no further analysis will be conducted. *See Salyer*, 72 M.J. at 423; *Biagase*, 50 M.J. at 151.

If the government does not meet its burden of rebutting the allegation at this initial stage, then the government may next seek to prove beyond a reasonable doubt that the unlawful command influence did not place "'an intolerable strain'" upon the public's perception of the military justice system and that "'an objective, disinterested observer, fully informed of all the facts and circumstances, would [*not*] harbor a significant doubt about the fairness of the proceeding.'" *Salyer*, 72 M.J. at 423 (quoting *Lewis*, 63 M.J. at 415). If the government meets its evidentiary burden at this stage of the analysis, then the appellant merits no relief on the grounds that there was an appearance of unlawful command influence. *See, e.g., United States v. Villareal*, 52 M.J. 27, 30–31 (C.A.A.F. 1999) (this Court affirming the decision of the court below after finding that any appearance of unlawful command influence was cured by the military judge's actions at court-martial). If the government does not meet its evidentiary burden, however, this Court will fashion an appropriate remedy. *Lewis*, 63 M.J. at 416.

It is these precedents, principles, and procedures—which have been articulated by this Court over the course of more than six decades—which serve as our touchstone as we analyze Appellant's claims of unlawful command influence in the instant case.

### III. Analysis

Appellant is challenging his convictions on the basis of both actual unlawful command influence and the appearance of unlawful command influence. We first turn our attention to the issue of whether there was actual unlawful command influence in this case. We hold there was not. Specifically, we conclude that even assuming an unrebutted showing of unlawful command influence by the Secretary of the Air Force and/or the Chief of Staff of the Air Force, there is an insufficient basis to deduce that Appellant personally suffered any prejudice.

In reaching this conclusion, we note the following: a convening authority merely applies a reasonable grounds

standard in determining whether to refer charges to a general court-martial (which is quite a low standard), Rule for Courts-Martial 601(d)(1); there were two witnesses—not just one—who alleged abuse by Appellant; there was physical evidence corroborating the allegations against Appellant; there was evidence that Appellant had previously engaged in similar violence; the Article 32, UCMJ, 10 U.S.C. § 832 (2012), Investigating Officer (IO) recommended referral of all sexual assault charges; and every subordinate commander and the SJA recommended referral of all charges against Appellant. Thus, there is no reasonable likelihood that a different convening authority standing in the shoes of Lt Gen Franklin would have made a different referral decision. Accordingly, Appellant is entitled to no relief based on a claim of actual unlawful command influence.

We reach a different result, however, in regard to Appellant's claim of an appearance of unlawful command influence. In reaching this conclusion we first address the military judge's determination that Lt Gen Franklin was "bombproof" in regard to exercising his discretion as the general court-martial convening authority (GCMCA) in this case. As the Government's appellate brief memorably characterizes it, the military judge's reasoning was as follows:

> [O]f all the general court-martial convening authorities that the Appellant could have ended up with, he was fortunate enough to have drawn a convening authority who had a long history of ignoring political pressure, and, by the time he reviewed the Appellant's case, no longer had anything to gain or lose when it came to his Air Force career.

We conclude that the military judge's determination that Lt Gen Franklin was "bombproof" is not supported by the facts and circumstances surrounding this case. (Although it is a close question, we view the military judge's determination that Lt Gen Franklin was "bombproof" as being a legal conclusion rather than a factual finding (i.e., based on the facts in this case, the military judge reached the legal conclusion that Lt Gen Franklin was immune to unlawful command influence).) Specifically, we note that the personnel actions previously taken by the Secretary of the Air Force and/or the Chief of Staff of the Air Force did not inoculate Lt

Gen Franklin from further negative personnel actions. For example, if the Secretary came to believe that Lt Gen Franklin was obstinately "refusing" to refer "another" meritorious case to a general court-martial, she could have removed him *immediately* from his position of command—which likely would have carried significant consequences in terms of adverse public attention and post-military career opportunities. Thus, an objective disinterested observer would not agree that Lt Gen Franklin had nothing to gain or lose here. Moreover, we note that in light of the attendant circumstances in this case, if anything, Lt Gen Franklin would have been more acutely aware than other GCMCAs about how closely his referral decisions were being scrutinized by his superiors *and* about the potential personal consequences of "ignoring political pressure" when making those referral decisions. Thus, we conclude that, at a minimum, Lt Gen Franklin was no more "bombproof" than any other GCMCA.

We next address the military judge's heavy reliance on Lt Gen Franklin's assurance that his decision to refer the instant case to a general court-martial was not affected by the previous personnel action taken against him. Specifically, Lt Gen Franklin stated that he "did not and would not allow improper outside influences to impact [his] independent and impartial decisions as a GCMCA." But that statement by Lt Gen Franklin did not stand in isolation; in his January 28, 2014, interview with defense counsel for this case, he admirably conceded that there "probably is an appearance of UCI," and it "would be foolish to say there is no appearance of UCI."

As we can see from these statements, Lt Gen Franklin himself acknowledged the existence of many of the essential facets of a valid claim of an appearance of unlawful command influence. We therefore conclude that the military judge's heavy reliance on Lt Gen Franklin's assurances in this case was misplaced.

Next, we address the Government's argument that there can be no finding of unlawful command influence here because "no one in a position of authority over Lt Gen Franklin … even knew of the existence of [this] specific case." This argument is unavailing. It is irrelevant whether the Secretary of the Air Force or the Chief of Staff of the Air Force

sought to affect Lt Gen Franklin's independent discretionary decision-making as a GCMCA in this particular case. No showing of knowledge or intent on the part of government actors is required in order for an appellant to successfully demonstrate that an appearance of unlawful command influence arose in a specific case. *See Biagase*, 50 M.J. at 151. In cases involving unlawful command influence, the key to our analysis is effect—not knowledge or intent.

Having disposed of these preliminary matters, we now turn our attention to the two principal issues at hand. First, did the Secretary of the Air Force and/or the Chief of Staff of the Air Force engage in conduct that constituted unlawful command influence? *See Salyer*, 72 M.J. at 423. And second, if there was unlawful command influence, would an objective, disinterested observer, fully informed of all the facts and circumstances, harbor a significant doubt about the fairness of the proceeding? *See id.* We conclude that the answer to both questions is "Yes."

In concluding that Appellant has met his burden of showing "some evidence" that the conduct of the Secretary of the Air Force and/or the Chief of Staff of the Air Force constituted unlawful command influence, we note the following points. *See Stoneman*, 57 M.J. at 41.

- Prior to the confirmation of Deborah Lee James as Secretary of the Air Force, a key member of the Senate Armed Services Committee who would later vote on her nomination commented on Lt Gen Franklin's decision to set aside the findings and sentence in the *Wilkerson* case. The senator specifically stated that commanders needed to be held "accountable" for their handling of sexual assault charges.

- Ms. James subsequently was confirmed by the Senate, and on December 20, 2013, she was sworn in as Secretary of the Air Force.

- On December 23, 2013, Lt Gen Franklin read what he described as an article in which one of the senators on the Senate Armed Services Committee indicated that he was scheduled to retire in the near future.

15

- On December 27, 2013, the Chief of Staff of the Air Force telephoned Lt Gen Franklin and informed him that the new Secretary had "lost confidence" in him and that he had two options: voluntarily retire from the Air Force at the lower grade of major general, or wait for the Secretary to remove him from his command in the immediate future.

- Three hours after this call, Lt Gen Franklin decided to retire. Because Lt Gen Franklin did not have the requisite time in his highest pay grade, this retirement carried with it a loss of rank and a concomitant loss of retirement pay.

- In his written retirement request, Lt Gen Franklin acknowledged the following: "My decisions as a [GCMCA] have come under great public scrutiny," and "media attention … will likely occur on subsequent sexual assault cases I deal with."

- On the same day that Lt Gen Franklin was contacted by the Chief of Staff, he received the referral package regarding Appellant's case. On January 6, 2014, Lt Gen Franklin referred Appellant's case, which included sexual assault charges, to a general court-martial. Thus, Appellant's case qualified as a "subsequent sexual assault case[]" that Lt Gen Franklin had expressed concern about due to the likelihood of "media attention" and "great public scrutiny."

- At the time he made the referral in Appellant's case, Lt Gen Franklin was vulnerable to additional adverse personnel action by the Secretary of the Air Force. (Lt Gen Franklin did not officially retire until April 1, 2014.)

- The Secretary of the Air Force and the Chief of Staff of the Air Force failed to take the necessary prophylactic steps to ensure that Lt Gen Franklin's handling of "subsequent sexual assault cases" did not give rise to the appearance of unlawful command influence. Specifically, upon determining that they had lost confidence in him, Lt Gen

16

Franklin's superiors failed to direct him not to take any further action in regard to court-martial matters pending before him. (For example, they did not direct him to send these matters to a higher headquarters GCMCA; they did not direct him to send them to an adjacent headquarters GCMCA; and they did not direct him to delay action on these matters and hold them until either an acting commander or successor in command had taken over.)

- In the alternative, once Lt Gen Franklin actually did refer the instant case to a general court-martial, his superiors failed to withdraw the charges and to then seek re-referral through commanders untainted by unlawful command influence.

Under the totality of these circumstances, we conclude that Appellant has shown "some evidence" of unlawful command influence by the Secretary of the Air Force and/or the Chief of Staff of the Air Force regarding the referral of the instant case to a general court-martial. *See Stoneman*, 57 M.J. at 41. In making this determination, we conclude that the Government has not met its burden of proving beyond a reasonable doubt that the relevant facts cited above did not exist or that these facts did not constitute unlawful command influence. *See Salyer*, 72 M.J. at 423.

Having established that there was apparent unlawful command influence in this case, we next conclude that the Government has not met its burden of proving beyond a reasonable doubt that the conduct of the Secretary of the Air Force and/or the Chief of Staff of the Air Force did not place an intolerable strain upon the public's perception of the military justice system. *See id.* To the contrary, we deem the totality of the circumstances in this case to be particularly troubling and egregious. As such, we conclude that an objective, disinterested observer with knowledge of all the facts would harbor a significant doubt about the fairness of the court-martial proceedings. *See Lewis*, 63 M.J. at 415. Specifically, we conclude that members of the public would understandably question whether the conduct of the Secretary of the Air Force and/or the Chief of Staff of the Air Force im-

properly inhibited Lt Gen Franklin from exercising his court-martial convening authority in a truly independent and impartial manner as is required to ensure the integrity of the referral process. Indeed, we adopt Lt Gen Franklin's words as our own: "[It] would be foolish to say there is no appearance of UCI."

In reaching our holding in this case, we fully acknowledge that we do not have the authority to redress the chilling effect that the conduct of the Secretary of the Air Force and/or the Chief of Staff of the Air Force generally may have had on other convening authorities and in other criminal cases that are not before us. We recognize that such systemic problems must be left to Congress and the executive to address. Nonetheless, in individual cases that are properly presented to this Court—such as Appellant's—we will remain ever mindful of Chief Judge Everett's admonition that unlawful command influence is the "mortal enemy of military justice," and we will meet our responsibility to serve as a "bulwark" against it by taking all appropriate steps within our power to counteract its malignant effects.[9] *Thomas*, 22 M.J. at 393.

### IV. Conclusion

This Court unequivocally endorses the Supreme Court's observation that "[f]ederal courts have an independent interest in ensuring that … legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988). In adhering to this pronouncement, we conclude that the appearance of unlawful command influence in this case cannot go unaddressed. Accordingly, we reverse the findings and sentence in this case without prejudice[10] and

---

[9] We pointedly emphasize that this mission is not ours alone. Military judges must continue to fulfill their essential role as the "sentinel" of the military justice system in indentifying and addressing instances of unlawful command influence. *Harvey*, 64 M.J. at 14; *see also United States v. Douglas*, 68 M.J. 349, 355 (C.A.A.F. 2010). Moreover, judges on the service Courts of Criminal Appeals must also appropriately address unlawful command influence whenever they encounter it in specific cases.

[10] While Appellant has the right to a court-martial process that is free from the taint of unlawful command influence, we conclude that reversing the findings *with* prejudice would result in an

18

return the case to the Judge Advocate General of the Air Force. A rehearing is authorized.

---

improper windfall for Appellant because he did not suffer individualized prejudice in this case. *Cf. United States v. Villamil-Perez*, 32 M.J. 341, 344 (C.M.A. 1991) (concluding that appellant suffered no substantial prejudice, so setting aside his dishonorable discharge or reducing its degree "would be an unjustified windfall for appellant").

Judge STUCKY, dissenting.

The goal of a court-martial is to seek justice, both for society and for the accused. When a court-martial fails to attain that goal, the commander-in-chief, relevant senior government leaders, and members of Congress may have a duty to speak out and provide the remedies justice requires. However, when they publically castigate individual convening authorities because they disagree with how that convening authority exercised his or her statutory discretion and demand convening authorities exercise that discretion in a specific manner, they send a perceptible chill over the entire military justice system that may affect the right of an accused to a fair trial.

Nevertheless, I am unable to agree with the majority that the Secretary of the Air Force or the Chief of Staff of the Air Force actually or apparently unlawfully influenced Appellant's court-martial. Article 37(a), UCMJ, provides, in part: "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence … the action of any convening, approving, or reviewing authority with respect to his judicial acts." 10 U.S.C. § 837(a) (2012). There is no evidence that the Secretary even knew of Appellant's case, let alone that she tried to coerce or influence Lieutenant General (Lt Gen) Franklin's referral decision. Instead, she merely exercised her lawful authority to remove a commander in whom she had lost confidence by giving him an ultimatum: retire or be fired. The Chief of Staff simply relayed the Secretary's message. Therefore, I do not see this case as one involving unlawful influence.

After finding no actual unlawful influence, the majority concludes that there is the appearance of unlawful command influence. To reach its conclusion, the majority relies on a test that, by its own terms, makes little sense: "'Thus, the appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.'" *United States v. Boyce*, __ M.J. __, __ (9–10) (C.A.A.F. 2017) (quoting *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006)). But it is difficult to understand how an objective, disinterested, *fully*

*informed observer*, knowing that there is no actual unlawful influence, "would harbor a significant doubt about the fairness of the proceeding."

Although the issue was not raised by Appellant, I believe Lt Gen Franklin was an "accuser" and, thus, disqualified from referring Appellant's case to trial. A commanding officer who is an accuser may not convene a court-martial. Article 22(b), UCMJ, 10 U.S.C. § 822(b) (2012). "The term 'accuser' means a person who signs and swears to charges, any person who directs that charges nominally be signed and sworn to by another, and *any other person who has an interest other than an official interest in the prosecution of the accused*." Article 1(9), UCMJ, 10 U.S.C. § 801(9) (2012) (emphasis added). When the convening authority is an accuser, "the court shall be convened by superior competent authority." Article 22(b), UCMJ; *see United States v. Ashby*, 68 M.J. 108, 131 (C.A.A.F. 2009) (explaining that a convening authority may become a de facto accuser if his interest in the case is other than official).

Under the facts of this case, as ably recounted in the majority opinion, Lt Gen Franklin was a de facto accuser. He had an interest in the case that was other than official, viz., at what grade he would be retired. In such circumstances, he was disqualified from referring the case to trial and should have sent Appellant's case to a superior competent authority to determine whether to refer the case to trial. Rule for Courts-Martial (R.C.M.) 601(c) Discussion ("A convening authority who is disqualified may forward the charges and allied papers for disposition by competent authority superior in rank or command.").

In this case, however, Lt Gen Franklin's disqualification does not inure to Appellant's benefit. Nonjurisdictional objections based on defects in the referral of charges must be made before trial. R.C.M. 905(b)(1). The disqualification of the convening authority is a nonjurisdictional defect. *United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009); *United States v. Wilson*, 21 M.J. 193, 197 (C.M.A. 1986). Therefore, Appellant's failure to raise the issue before pleas were entered constituted waiver. R.C.M. 905(e).

As Appellant is not entitled to relief, I respectfully dissent.

Judge RYAN, dissenting.

I agree with the majority that there was no actual unlawful command influence in this case. I respectfully dissent because I also believe that there was no prejudice to the accused.

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights *of the accused.*" Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) (2012) (emphasis added). Without prejudice to the substantial rights *of the accused* from an error—hitherto defined as " 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different,' " *United States v. Lopez*, __ M.J. __, __ (4) (C.A.A.F. 2017) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016))—Article 59(a), UCMJ, prohibits us from affording relief. The majority ably points out that there is not one iota of prejudice to the accused in this case because "there is no reasonable likelihood that a different convening authority standing in the shoes of Lt Gen Franklin would have made a different referral decision." *United States v. Boyce*, __ M.J. __ , __ (13) (C.A.A.F. 2017). After finding no prejudice, however, the majority goes on to grant Appellant relief, despite the restriction that Article 59(a), UCMJ, places on this Court.

The background story of this case is pregnant with every appearance of manifestly punitive actions by the Secretary of the Air Force (SECAF) and the Chief of Staff of the Air Force (CSAF) toward Lt Gen Franklin. *See id.* at __ (2–5). And their actions were no doubt incited by various statements made by members of Congress after Lt Gen Franklin exercised his statutory discretion[1] in *United States v.*

---

[1] As the convening authority, Lt Gen Franklin had unfettered discretion in *United States v. Wilkerson* to set aside the findings of guilty if he believed the accused was not guilty. *See* Article 60(c)(1), UCMJ, 10 U.S.C. § 860(c)(1) (2012) ("The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority."); *see also* Rule for Courts-Martial (R.C.M.) 1107(c)(2) (2012). Similarly, in *United States v. Wright,*

*Wilkerson* and *United States v. Wright*.[2] While disturbing, in the final analysis, the only person "prejudiced" by the ac-

---

Lt Gen Franklin had statutory discretion to decline to refer charges. *See* Article 60(c)(1), UCMJ; R.C.M. 601(d)(1) Discussion.

[2] Public examples of congressional outrage in response to Lt Gen Franklin's actions abound. For example, Senator McCaskill wrote an op-ed in response to *Wilkerson*, requesting that the SECAF and CSAF conduct a review of Lt Gen Franklin's actions, Claire McCaskill, *Their day in court*, St. Louis Post-Dispatch (Mar. 12, 2013), http://www.stltoday.com/news/opinion/columns/their-day-in-court/article_ced54e14-5dca-5c53-a038-4b9de9ccbaa9.html (last visited May 17, 2017); Senator Gillibrand said in response to *Wilkerson* that "[e]veryone knows the current [military justice] system is not working," Donna Cassata, *Outraged lawmakers look to change military justice*, Associated Press (Apr. 30, 2013), https://www.yahoo.com/news/outraged-lawmakers-look-change-military-justice-071108517.html; and Senators Boxer and Shaheen wrote a letter to Secretary Hagel decrying the fact that Lt Gen Franklin had not "adequately explained" his clemency decision in *Wilkerson* and urging Secretary Hagel to both provide more information about the clemency decision and take action to restrict military commander authority. Press Release, Senator Jeanne Shaheen, *Boxer, Shaheen Call on Defense Secretary Hagel to Immediately Review Dismissal of Sexual Assault Case* (Mar. 4, 2013), https://www.shaheen.senate.gov/news/press/boxer-shaheen-call-on-defense-secretary-hagel-to-immediately-review-dismissal-of-sexual-assault-case; *see also* Press Release, Senator Claire McCaskill, *McCaskill Calls for Removal of Lt. Gen. Craig Franklin from Command* (Dec. 18, 2013), https://www.mccaskill.senate.gov/media-center/news-releases/mccaskill-calls-for-removal-of-lt-gen-craig-franklin-from-command (describing Lt Gen Franklin as "unfit for command" and lacking in "sound judgment," "basic professional judgment," and "respect for the responsibilities held by military commanders to protect those under their authority"); Press Release, Senator Kirsten Gillibrand, *Gillibrand Statement on Retirement of Military Commander Who Overturned Guilty Verdict In Aviano Sexual Assault Case and Shut Down Court Martial* [sic] *of Accused Rapist in Another Assault Case* (Jan. 8, 2014), https://www.gillibrand.senate.gov/newsroom/press/release/gillibrand-statement-on-retirement-of-military-commander-who-overturned-guilty-verdict-in-aviano-sexual-assault-case-and-shut-down-court-martial-of-accused-rapist-in-another-assault-case- (describing Lt Gen Franklin as "untrained" and "biased," and accusing him of "subvert[ing] justice").

tions recounted by the majority was Lt Gen Franklin, whose reputation was sullied and career cut short. There is no evidence that the SECAF or CSAF "attempt[ed] to coerce or, by any unauthorized means, influence the action of [Appellant's] court-martial." Article 37(a), UCMJ, 10 U.S.C. § 837(a) (2012). Indeed, there is no evidence the SECAF or CSAF were even aware of Appellant's case, or that anyone believed that they were.

I also agree with Judge Stucky that if there is no actual unlawful influence, "it is difficult to understand how an objective, disinterested, *fully informed observer*" would doubt the fairness of the proceedings—at least in this case. *Boyce*, __ M.J. at __ (1–2) (Stucky, J., dissenting). The military judge found as a matter of fact that Lt Gen Franklin "may be the most bombproof of any convening authority" because he had resolved to retire before referring Appellant's charges and had, "on occasion, seemingly gone against the interests of others in the military" in *Wilkerson* and *Wright*. This factual finding is amply supported by the record.[3] Based in part on this finding of fact, and the fact that every other person in the chain of command had recommended a general court-martial, the military judge in this case found as a matter of law that there was no actual or apparent unlawful command influence. Yet the majority, contrariwise, determines that Lt Gen Franklin's demonstrably independent judgment is a "legal conclusion," and then dismisses it. *See Boyce*, __ M.J. at __ (13).

Certainly there was monkey business aplenty here with respect to Lt Gen Franklin, and I share the majority's frustration with "the chilling effect that the conduct of the Secretary of the Air Force and/or the Chief of Staff of the Air Force generally may have had on other convening authorities and in other criminal cases that are not before us." *Id.* at __ (18). But a correctible legal error of apparent unlawful command influence must be based upon more than the theoretical presence of influence on a particular convening au-

---

[3] The Air Force Court of Criminal Appeals reaffirmed this factual finding. *United States v. Boyce*, No. ACM 38673, 2016 CCA LEXIS 198, at *23, 2016 WL 1276663, at *8 (A.F. Ct. Crim. App. Mar. 24, 2016).

thority. It must be based upon an objective observation of the "facts and circumstances" of an individual case, and a finding of substantial prejudice to the rights of the accused. *See United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013). As we have stated in another context:

> [T]here must be something more than an appearance of evil to justify action by an appellate court in a particular case. "Proof of [command influence] in the air, so to speak, will not do." We will not presume that a military judge has been influenced simply by the proximity of events which give the appearance of command influence in the absence of a connection to the result of a particular trial.

*United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991) (alteration in original) (footnote omitted) (citations omitted), *cert. denied*, 503 U.S. 936 (1992); s*ee also United States v. Levite*, 25 M.J. 334, 341 (C.M.A. 1987) (Cox, J., concurring). The majority's sole attempt to find more than "proof in the air" is its assertion that Lt Gen Franklin "*was vulnerable to* additional adverse personnel action by the Secretary of the Air Force" if he did not refer Appellant's case, *Boyce*, __ M.J. at __ (16) (emphasis added), despite the fact that Lt Gen Franklin realistically had nowhere lower to go than he had already gone, and despite its conclusion that, due to the amount of evidence supporting referral, no other convening authority would have made a different referral decision in the accused's case. *See id.* at __ (13).

I posit that Congress had good reason to tether appellate relief to Article 59(a)'s requirement of prejudice to the accused, and thus respectfully dissent from the majority's conclusion that this case was "properly presented." *Id.* at __ (18).