# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

—————————————

**Misc. Dkt. No. 2023-08**

—————————————

**In re RW**
*Petitioner*

**Chase N. ARNOLD**
Staff Sergeant (E-5), U.S. Air Force
*Real Party in Interest*

—————————————

Review of Petition for Extraordinary Relief in the Nature of
a Writ of Mandamus

Decided 9 February 2024[1]

—————————————

*Military Judge*: Michael J. Taber.

*GCM Convened at*: Tyndall Air Force Base, Florida.

*For Petitioner*: Captain Morgan Brewington, USAF (argued); Devon A. R. Wells, Esquire.

*For the United States*: Captain Kate E. Lee, USAF (argued); Lieutenant Colonel James P. Ferrell, USAF; Mary Ellen Payne, Esquire.

*For Real Party in Interest*: Captain Michael J. Bruzik, USAF (argued); Megan P. Marinos, Esquire.

Before RICHARDSON, DOUGLAS, and WARREN, *Appellate Military Judges*.

Judge WARREN delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge DOUGLAS joined. Judge DOUGLAS filed a separate concurring opinion.

—————————————

---

[1] We heard oral argument in this case on 14 December 2023.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

—————————————

WARREN, Judge:

On 25 September 2023, pursuant to Article 6b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b,[2] and Rule 19 of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, JT. CT. CRIM. APP. R. 19, Petitioner requested this court issue a stay of proceedings and a writ of mandamus in the pending general court-martial of the Real Party in Interest (RPI) identified above. Petitioner is an alleged victim of 31 of 32 charged specifications referred to the court-martial. Petitioner specifically requested this court vacate the military judge's orders pertaining to review of her mental health records because "[t]he order[s] to produce mental health records without conducting a [Mil. R. Evid.] 513 hearing violates [Petitioner]'s right to be heard before the Court orders production of mental health records."

On 26 September 2023, this court denied a stay of proceedings and set forth filing deadlines.[3] On 27 September 2023, Petitioner filed a motion to reconsider our denial of a stay and to supplement the record. This court reconsidered its prior ruling and granted Petitioner's motion to supplement the record and granted a stay, in part, on 28 September 2023.[4] With prior permission from this Court, Petitioner then filed a supplement to her petition on 10 October 2023, requesting a writ of mandamus issue to: (1) vacate the military judge's 27 September 2023 order compelling production of Petitioner's medical records, (2) direct destruction of the records produced pursuant to the military judge's 27 September 2023 order, and (3) require the military judge to "comply with M.R.E. 513."

—————————————

[2] Our references in this opinion to the non-punitive provisions of the UCMJ, Military Rules of Evidence, and Rules of Courts-Martial are to the *Manual for Courts-Martial, United States* (2023 ed.). Our references to the punitive provisions of the UCMJ, and we presume references by the counsel in their various filings for the court-martial, are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] This court granted Petitioner's 25 September 2023 motion to supplement her petition for extraordinary relief not later than 29 September 2023, and granted leave for the Government and RPI to file an answer not later than 20 days after any forthcoming petition supplement by Petitioner.

[4] Whereas Petitioner had moved for a stay of the entirety of the court-martial, we granted a stay solely as to the military judge's production order for Petitioner's mental health records, with a specific *proviso* that all unaffected portions of the court-martial may continue.

Ultimately, after receiving responsive pleadings from Petitioner, RPI, and Government, we heard oral argument in this case on 14 December 2023, considering one discrete issue:

> WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN ORDERING AN ATTORNEY FROM THE MEDICAL LAW BRANCH OF THE HEADQUARTERS AIR FORCE CLAIMS AND TORT LAW LITIGATION DIVISION (JACC) TO REVIEW PETITIONER'S HEALTH RECORDS AND IDENTIFY AND REDACT INFORMATION PRIVILEGED UNDER MILITARY RULE OF EVIDENCE 513 AND RELEASE NON-PRIVILEGED INFORMATION TO GOVERNMENT COUNSEL TO PROVIDE TO DEFENSE COUNSEL.

Following oral argument, the Government submitted a Motion to Attach Documents on 21 December 2023, consisting of a sworn declaration from the trial counsel, Lieutenant Colonel (Lt Col) LW, and a written copy of the military judge's 27 September 2023 order. We granted that motion on 4 January 2024. The materials we received before and after oral argument have no factual information delineating any pre-existing military duty or legal authority for JACC to review the mental health records in the case at bar under the circumstances presented.

For the reasons set forth below, we grant the petition *in part*. We vacate the military judge's 27 September 2023 written order and oral supplement to that order to release Petitioner's "mental health diagnosis and treatment records" maintained by the 31st Operational Medical Readiness Squadron Mental Health Flight (31 OMRS/MHF) located at Aviano Air Base, Italy, to Ms. CM, a civilian medical law attorney, and subsequently to Major (Maj) AW, a military medical law attorney (both of whom were assigned to JACC), for review and identification of releasable treatment and diagnosis information, and review and redaction of "any and all matters subject to privilege under [Mil. R. Evid.] 513."

## I. BACKGROUND

The petition and supplement thereto, the responsive briefs from Government and the RPI, and Petitioner's reply briefs, with their several attachments, establish the following sequence of events.

In the preliminary stages of the investigation of the RPI's case, on 27 August 2021 Petitioner authorized release of her medical history to the Aviano Air Base Air Force Office of Special Investigations detachment, consisting of over 500 pages of her medical history. The Government then provided the Defense those records in discovery on or about 12 September 2022. While these

medical records did not contain any confidential communications between Petitioner and any mental health providers, they did include a listing of 15 separate dates from November 2019 forward when Petitioner had scheduled appointments with military mental health providers. They also indicated (without providing additional details) that on four of those occasions, Petitioner received "behavioral assessments."

On 21 August 2023, trial defense counsel filed an initial discovery request requesting, *inter alia*: "mental health records of [Petitioner] from 1 December 2017 – present pursuant to *United States v. Mellett* [sic], 82 M.J. 374." Trial counsel denied that request on 25 August 2023.

On 30 August 2023, trial defense counsel sent a supplemental email to trial counsel, clarifying that the Defense was not seeking any "communications between [Petitioner] and any psychotherapist that is privileged under [Mil. R. Evid.] 513 at this time." The email asserted trial defense counsel was only seeking diagnosis and mental health treatments referenced in the mental health records, and further asserted that the *Mellette* decision had held that type of information is not privileged under Mil. R. Evid. 513. Trial counsel denied that request on 31 August 2023.

On 1 September 2023, trial defense counsel filed a motion to compel production of that information (and other unrelated information not subject to this extraordinary writ petition), arguing that: (1) mental health diagnoses and treatment dates are non-privileged information within the meaning of *United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022), *cert. denied*, 143 S. Ct. 2637 (2023); (2) the information is relevant to defense preparation for trial because it could impact Petitioner's credibility as a witness to the extent that those diagnoses or treatments demonstrated an impaired ability for Petitioner to perceive, relate, and recall events relevant to the court-martial; and (3) the Government had an obligation to disclose that information under Rule for Courts-Martial (R.C.M.) 701(a)(2)(B) because the information was contained in mental health records that were "within the possession, custody, or control of military authorities," specifically "an on[-]base [Air Force] agency." The Government filed a response, generally denying the information was relevant and necessary within the meaning of R.C.M. 701(a)(2) for purposes of defense trial preparation.

On 14 September 2023, in a written ruling, the military judge deferred ruling on the motion to compel Petitioner's mental health diagnoses and treatment records based upon a finding that the Government had "not yet taken the preliminary step of identifying if any of the requested medical records exist . . . ." Accordingly, the military judge ordered the Government to: (1) identify whether there were "any mental health diagnosis and treatment records of [Petitioner], within the possession, custody, or control of military authorities,

which were created during the timeframe of the charged offenses involving [Petitioner], specifically, between 24 December 2017 and 30 May 2021;" (2) "respond to the Defense stating any basis for non-disclosure and notify the [c]ourt," if such records existed but were privileged; and (3) "provide the record to the Defense," if such records existed and contained relevant, disclosable, non-privileged information.

On 19 September 2023, trial counsel sent a status update email to the military judge, trial defense counsel, and Petitioner's counsel detailing the Government's compliance with the military judge's 14 September 2023 ruling. Trial counsel advised that she had consulted with the Aviano Air Base military treatment facility and that:

> [T]he [Defense Health Agency (DHA)] legal advisor [ ] indicated the local [military treatment facility] would be able to provide diagnosis information pursuant to the military judge's ruling and would provide additional records if they receive a court order (i.e. gathering records for an in camera review).

On 20 September 2023, Petitioner's counsel filed a motion for appropriate relief with the military judge, arguing that Petitioner asserted her privilege to any and all mental health records pertaining to her and that her mental health records were not in the possession, custody, or control of military authorities such that they were subject to discovery under R.C.M. 701. Petitioner's counsel requested: (1) the military judge withdraw his 14 September 2023 ruling; (2) the military judge issue a supplemental order disallowing the Defense from using any mental health information disclosed by trial counsel to trial defense counsel, to date; (3) the opportunity to be heard in a closed hearing pursuant to Mil. R. Evid. 513 prior to the military judge ordering the review of any mental health records; and (4) the opportunity to provide oral argument at an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session on the motion for appropriate relief itself. Both trial counsel and trial defense counsel opposed Petitioner's motion, with trial counsel opposing on grounds that the Government made no improper disclosures in the first instance, and trial defense counsel opposing on grounds that Petitioner lacked standing to bring the motion at all.

On 26 September 2023 the military judge held an Article 39(a), UCMJ, session where he denied Petitioner's motion for appropriate relief and declined to permit Petitioner to provide any further argument, holding that Petitioner lacked standing to be heard.

On 26 September 2023 the military judge issued an order to effectuate his 14 September 2023 ruling. He directed:

> [The 31 OMRS/MHF commander, Maj AK], located at Aviano Air Base, Italy[,] to work with DHA Medical-Legal Consultant, Mr.

[TS] or other duly appointed medical law attorney to ensure that any and all matters subject to privilege under [Mil. R. Evid.] 513 are fully redacted prior to providing the information to Government counsel. The records shall be delivered with appropriate [personally identifiable information (PII)] and/or [protected health information (PHI)] warnings to the 31st Fighter Wing Office of the Staff Judge Advocate, . . . ATTENTION: Captain [(Capt) EM] . . . . Contact Capt [EM] immediately to discuss delivery methods for the records.

Thereafter, trial counsel informed the military judge that Mr. TS declined to cooperate in the execution of the military judge's 26 September 2023 order. According to Lt Col LW, Mr. TS had informed trial counsel that he "refused to review [Petitioner]'s mental health records for redactions claiming that the military judge's order was too vague" and that "DHA did not have the necessary expertise [and] time" to conduct the type of review required by the order. Based on our read of the record, neither Mr. TS nor anyone at the 31 OMRS/MHF took action to review and redact Petitioner's mental health records as a consequence of the military judge's 26 September 2023 order.

On 27 September 2023, the military judge issued a supplemental order, which provided as follows:

I direct the [31 OMRS/MHF commander, Maj AK], located at Aviano Air Base, Italy[,] to release the above[-]referenced mental health diagnosis and treatment records to Ms. [CM, a JACC medical law attorney,] to review to ensure that only treatment and diagnosis records are released and that any and all matters subject to privilege under [Mil. R. Evid.] 513 are fully redacted prior to providing the information to Government counsel. After review, Ms. [CM] shall deliver the records with appropriate PII, PHI[,] or any other applicable warnings to the 31st Fighter Wing Office of the Staff Judge Advocate, . . . ATTENTION: [Capt EM]. Contact [Capt EM] immediately to discuss delivery methods for the records.

On 27 September 2023, trial counsel served the military judge's 27 September 2023 order on a representative of the 31 OMRS/MHF. The record before us does not indicate how JACC is affiliated with 31 OMRS/MHF.

Later in the day on 27 September 2023, the military judge held an R.C.M. 802 conference with trial counsel, trial defense counsel, and Petitioner's counsel to apprise himself of the status of the Government's compliance with his 27 September 2023 order pertaining to Petitioner's mental health records. At that conference, the trial counsel informed the military judge that Ms. CM

would not be conducting the review and redaction of Petitioner's mental health records, but instead a JACC medical law attorney, Maj AW, could do so. During that R.C.M. 802 conference, and without formally reconvening an Article 39(a), UCMJ, session, the military judge issued an oral modification to his prior written order, now authorizing Maj AW to complete the review of Petitioner's records and identify and redact any privileged material.[5]

Following this R.C.M. 802 conference on 27 September 2023, 360 pages of Petitioner's unredacted mental health records (dating from 1 December 2017 up to that present date) were sent to Maj AW for review and redaction. Maj AW redacted the records and released the redacted records to trial counsel sometime the morning of 28 September 2023.[6] Trial counsel then immediately released the redacted records to trial defense counsel. Meanwhile, at 1521 EDT on 28 September 2023, after reconsidering our previous denial of Petitioner's request for a stay, this court stayed the trial court's order for production, unaware the records had already been produced.

## II. DISCUSSION

### A. Law

The All Writs Act, 28 U.S.C. § 1651(a), grants a Court of Criminal Appeals "authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005)). The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (citations omitted). In order to prevail on a petition for a writ of mandamus, the petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004)); *see also In re KK*, ___ M.J. ___, Misc. Dkt. No. 2022-13, 2023 CCA LEXIS 31, at *10 (A.F. Ct. Crim. App. 24 Jan. 2023) (holding traditional mandamus standard of review applicable to Article 6b(e), UCMJ, petitions). A writ of mandamus "is a 'drastic instrument which should

---

[5] Insofar as this oral modification occurred off the record in an R.C.M. 802 conference, the court here relies upon the declaration of the Chief Special Trial Counsel Declaration (Lieutenant Colonel LW), dated 19 December 2023, submitted by the Government via Motion to Attach Documents which we granted on 4 January 2024.

[6] The time zone for Aviano Air Base, Italy, is six hours ahead of JACC and this court, both located near Washington, D.C.

be invoked only in truly extraordinary situations.'" *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983)).

Article 6b, UCMJ, states:

> If the victim[7] of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in [10 U.S.C. § 806b(e)(4)], the victim may petition the Court of Criminal Appeals for a writ of mandamus to require the . . . court-martial to comply with the section (article) or rule.

*See* 10 U.S.C. § 806b(e)(1).

Article 6b, UCMJ, provides that the right to petition a Court of Criminal Appeals for a writ of mandamus applies with respect to protections afforded by, *inter alia*, Article 6b, UCMJ, and Mil. R. Evid. 513. *See* 10 U.S.C. § 806b(e)(4). The traditional mandamus standard of review also applies to Article 6b(e), UCMJ, petitions. *See In re KK*, 2023 CCA LEXIS 31, at *10. Article 6b, UCMJ, provides that the victim of an offense under the UCMJ has, among other rights, "[t]he right to be treated with fairness and with respect for the dignity and privacy of the victim of an offense under this chapter." *See* 10 U.S.C. § 806b(a)(9).

"In a case referred for trial by court-martial, the trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Article 46(a), UCMJ, 10 U.S.C. § 846(a). "Evidence under the control of the Government may be obtained by notifying the custodian of the evidence of the time, place, and date the evidence is required and requesting the custodian to send or deliver the evidence." R.C.M. 703(g)(2). "Each party shall have adequate opportunity to prepare its case and equal opportunity to interview witnesses and inspect evidence . . . ." R.C.M. 701(e).

"After service of charges, upon request of the defense, the Government shall permit the defense to inspect any . . . papers, documents, [or] data, . . . if the item is within the possession, custody, or control of military authorities and [ ] the item is relevant to defense preparation." R.C.M. 701(a)(2)(A)(i). "The military judge may, consistent with [R.C.M. 701], specify the time, place, and manner of making discovery and may prescribe such terms and conditions as are

---

[7] Article 6b, UCMJ, refers to the rights of "victims" of offenses under the UCMJ, including at pretrial, trial, and posttrial phases of court-martial proceedings. The use of the term "victim" in this order reflects no determination or implication on the court's part as to the merits of the charged offenses in the RPI's court-martial.

just." R.C.M. 701(g)(1). As a tool to regulate discovery generally, the military judge is authorized to conduct in camera review over any evidence to which a claim of privilege applies. R.C.M. 701(g)(2). However, this authority is subject to the limitations in the Military Rules of Evidence. *See id.*; *see also United States v. Wright*, 75 M.J. 501, 510 (A.F. Ct. Crim. App. 2015) ("Normally, in camera review is an appropriate mechanism to resolve competing claims of privilege and right to review information." (Citations omitted).).

In general,

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

Mil. R. Evid. 513(a).

"Before ordering the production or admission of evidence of a patient's records or communication, the military judge must conduct a hearing, which shall be closed. . . . The patient must be afforded a reasonable opportunity to attend the hearing and be heard." Mil. R. Evid. 513(e)(2). "The military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." Mil. R. Evid. 513(e)(3).

Mental health diagnoses, treatment dates, and treatments are not themselves privileged under Mil. R. Evid. 513 because they fall outside the definition of "confidential communications" in Mil. R. Evid. 513(b)(4). *Mellette*, 82 M.J. at 380 ("A patient's diagnosis and the treatment that a patient received to care for those conditions are 'underlying facts,' not confidential communications." (Citation omitted).). Nonetheless, "documents that are not themselves communications may be partially privileged to the extent that those records memorialize or otherwise reflect the substance of privileged communications." *Id.* at 379 (citation omitted).

**B. Analysis**

Petitioner asserts that, in issuing the order to produce certain of her mental health records, the military judge erred in three general respects: (1) failing to hold a hearing as required by Mil. R. Evid. 513; (2) failing to apply the process and procedures as required by R.C.M. 703(g)(3) (arguing the Petitioner's mental health records physically maintained by the 31 OMRS/MHF were not "within the possession, custody, or control of military authorities" within the meaning of R.C.M. 701(a)(2)); and (3) issuing an order outside the scope of the military judge's authority. Petitioner claims the military judge's rulings

violated her "rights to be treated with fairness and respect for her dignity and privacy in violation of Article 6b(a)(9), [UCMJ]." Concluding that the military judge's order clearly and indisputably exceeded the military judge's authority under the law, we resolve this appeal on that basis alone and do not reach the remaining issues raised by Petitioner.[8]

Therefore, we focus this opinion on one salient issue: whether Petitioner is entitled to a writ of mandamus setting aside the military judge's order which mandated the transmittal of 360 pages of Petitioner's mental health records from the records holding agency to JACC for the functional equivalent of in camera review. To be clear, we find the military judge's 27 September 2023 order tasked a JACC medical law attorney to identify and redact information privileged under Mil. R. Evid. 513 and release non-privileged treatment and diagnosis records to the trial counsel.

**1. Mil. R. Evid. 513**

The military judge's 27 September 2023 written order—and presumably the oral supplement to that order—directed the 31 OMRS/MHF commander (1) "to release the above referenced mental health diagnosis and treatment records" to named attorneys at JACC with no apparent affiliation with 31 OMRS/MHF "to review to ensure that only treatment and diagnosis records are released *and that any and all matters subject to privilege under* [*Mil. R. Evid.*] *513 are fully redacted prior to providing the information to Government counsel.*" (Emphasis added).

Under the unique circumstances of this case, and the particular wording of the military judge's 27 September 2023 written court order and oral supplement, those orders were beyond the military judge's authority to issue for two reasons. First, the transmittal of the records from the records holding agency (31 OMRS/MHF) to an apparently unaffiliated attorney for review and redaction constituted an unauthorized disclosure of Petitioner's mental health

---

[8] We do not reach the issue of whether in camera review is required under Mil. R. Evid. 513(e) in *every case* where a military judge orders production of *non-privileged* information from a system of mental health records. Mil. R. Evid. 513(e) authorizes a military judge to conduct in camera review "*if* such examination is necessary to rule on the production or admissibility of *protected records or communications*." Mil. R. Evid. 513(e)(3) (emphasis added). There may well be occasions where the military judge deems it unnecessary to review mental health records. We leave for another day whether a military judge violates Mil. R. Evid. 513(e) if he determines in camera review is unnecessary because the parties have not requested, and the judge is not ordering, disclosure or production of privileged communications. *Cf. Mellette*, 82 M.J. at 380 (holding military judge erred in concluding references to mental health diagnoses and treatments within a victim's medical records were privileged under Mil. R. Evid. 513).

records, over Petitioner's objection, within the meaning of Mil. R. Evid. 513(a). Second, the military judge effectively ordered the JACC attorney to conduct an Mil. R. Evid. 513 review, and only the military judge is authorized to conduct the review.

Here, the military judge determined that pre-disclosure review of Petitioner's records—importantly, by an attorney apparently unaffiliated with the records-holding organization—was required in order to "fully redact" "any and all matters subject to privilege under [Mil. R. Evid.] 513" protected information prior to producing those releasable portions of the records to the parties. This was the functional equivalent of determining that in camera review was "necessary" to interpret and apply a rule of evidence, namely Mil. R. Evid. 513(e)(3).

Having determined interpretation and application of Mil. R. Evid. 513(e)(3) was necessary—as evidenced by his order—the military judge did not address the four prerequisites for in camera review of qualifying mental health records in accordance with Mil. R. Evid. 513(e)(3)(A)–(D). *Cf. In re AL*, Misc. Dkt. No. 2022-12, 2022 CCA LEXIS 702, at *21 (A.F. Ct. Crim. App. 7 Dec. 2022) (order) (granting Article 6b, UCMJ, petition on Mil. R. Evid. 513 grounds where the military judge ordered production of entirety of AL's Family Advocacy Program mental health records over AL's claims of privilege without adhering Mil. R. Evid. 513(e) procedural safeguards)).[9] Furthermore, even if the military judge had considered those prerequisites, Mil. R. Evid. 513(e)(3) authorizes only one person to complete in camera review: the military judge.

Arguably, the military judge's 26 September 2023 order did not suffer the same deficiency. There, the military judge did not clearly direct an unaffiliated attorney to review the records to ensure only responsive, non-privileged records were released to a party. Instead, he directed the 31 OMRS/MHF commander "to work with" what we read were medical-law advisors from DHA affiliated with the Aviano Air Base military treatment facility to ensure the MHF not release information outside the scope of the military judge's order. *See, e.g.*, *In re SB*, Misc. Dkt. No. 2023-10, 2023 CCA LEXIS 521, at *10 (A.F. Ct. Crim. App. 12 Dec. 2023) (unpub. op.) (where this court "[was not] persuaded that having such a [records] custodian receive legal advice in order to lawfully comply with their obligations is a 'disclosure' for such purposes"). If Petitioner's records contained privileged communications—as the military

---

[9] *In re AL* involved trial counsel who had previously reviewed and redacted the Family Advocacy Program mental health records at issue absent any court order at all, securing them from the base Family Advocacy Program office through an administrative request in response to a defense discovery request. 2022 CCA LEXIS 702, at *2–4.

judge suspected—ordering those records be sent to a JACC attorney violated Petitioner's right to privacy in her confidential communications.

### 2. Military Judge's Authority To Regulate Discovery and Production

The United States Court of Appeals for the Armed Forces (CAAF) in *Mellette* recognized that "documents that are not themselves communications may be partially privileged to the extent that those records memorialize or otherwise reflect the substance of privileged communications." 82 M.J. at 379. While non-privileged portions of Petitioner's mental health records were potentially subject to production via judicial order under R.C.M. 701(g)(1) and (g)(3), on this record we find the military judge was not authorized to order the records produced for interpretation and application of Mil. R. Evid. 513, and then delegate his responsibility to conduct that functional in camera review to a JACC attorney.

While the Government suggests that such a holding contravenes this court's recent decisions in *In re SB*, *supra*, and *In re SC*, Misc. Dkt. No. 2023-11, 2023 CCA LEXIS 522 (A.F. Ct. Crim. App. 12 Dec. 2023) (unpub. op.), we disagree. Those cases did not reach this specific factual scenario where a military judge's order directed an entity outside the records-holding agency (here meaning outside the 31 OMRS/MHF operating as part of the Aviano Air Base military treatment facility) to review (at least) what the CAAF has described as "partially privileged records." As this court explained in *In re SB*,

> [t]he military judge directed "[t]he appropriate medical professional, in coordination with the medical law attorney," to ensure the records produced were redacted of material outside the scope of the order. Under the circumstances, a fair reading of "the appropriate medical professional" would mean one who currently has lawful custody of or access to the records. Moreover, the military judge did not require any attorney to review the records, only that the medical professional redact the responsive records "in coordination" with a "medical law attorney."

Unpub. op. at *9 (second alteration in original).

Furthermore, in concluding that the military judge's order in *In re SB* did not clearly and indisputably exceed his authority under R.C.M. 701 and Mil. R. Evid. 513, this court was careful to caveat and distinguish that case from the facts which we find present at bar in this case, noting: "[t]his is not a situation where the military judge ordered an individual otherwise without access to privileged information to review the privileged information . . . ." *Id.* at *19. Unlike *In re SB* and *In re SC*—this *is* now that case.

We find Petitioner has demonstrated the right to issuance of a writ is clear and indisputable in light of the military judge's decision to abdicate his judicial responsibility to conduct an in camera review after determining (perhaps unnecessarily) that the functional equivalent of in camera review was necessary.

### 3. Taint Teams

We are compelled to address one final matter. The Government relies upon the broad authority of the military judge to regulate discovery under R.C.M. 701(g) as a license for the military judge to essentially designate an attorney who may have medical law experience to review mental health records for a criminal proceeding, broadly asserting that the military judge was appointing a form of "taint team"[10] to conduct an authorized review of the records. We are not persuaded.

First, while the Government identified no limiting principle for the military judge's broad mandate under R.C.M. 701(g)(1) to "prescribe such terms and conditions as are just" to regulate discovery, R.C.M. 701(g)(2) explicitly limits that authority in reference to the Military Rules of Evidence. In this case, that means Mil. R. Evid. 513. The Government asserts that Mil. R. Evid. 513(e)—regulating the procedure to determine production of potentially privileged records or communications—is not implicated because the military judge's order that the 31 ORMS/MHF commander transmit the entirety of Petitioner's mental health records maintained by that organization (some 360 unredacted pages in all) to a JACC attorney was not a "disclosure" or "production" within the meaning of Mil. R. Evid. 513(e)(4). However, this is not a case where the records holder merely sought in-house legal counsel before responding to a court order. Here, the Government has not identified how JACC attorneys have any ostensible link to the records-holding organization, nor any pre-existing military duty or legal authority to review the records. Moreover regardless of whether Mil. R. Evid. 513(e) procedures were required in this case in a circumstance where the Defense at trial were only requesting non-privileged *Mellette* material," the military judge's order here violated Mil. R. Evid. 513(a). In

---

[10] While the military judge did not use the word "taint team" in his order, the Government argues that the military judge essentially appointed a "taint" attorney to conduct the review of Petitioner's mental health records. The Government did not directly define "taint team" or "taint attorney" for this court. For purposes of this opinion, we construe a "taint attorney/team" utilizing a definition derived from *In re Grand Jury Subpoenas*, 454 F.3d 511, 522–23 (6th Cir. 2006), one of the cases cited in the Government's Motion to Cite Supplemental Authorities (granted by this court on 13 December 2023). Drawing from this case we construe "taint attorney" as an attorney not assigned as trial counsel in the case, tasked with reviewing potentially privileged materials already within the possession of the Government, for purposes of identifying privileged material and screening the prosecution team from the same. 454 F.3d at 522–23.

ordering the entirety of Petitioner's mental health records (which inevitably would have contained confidential communications somewhere within the voluminous 360 pages of records), transmitted from the record-keeping agency to an unaffiliated attorney at JACC, the military judge effected an unauthorized disclosure of confidential communications to someone without prior lawful access to or custody of the records.

Second, none of the cases to which the Government cites in its supplemental citation of authorities pertaining to this issue involved taint teams reviewing mental health records, and instead involved only review of potentially attorney-client privileged records. And in most of those cases, the records had already been seized and were in the possession of law enforcement.[11]

Third, assuming military judges could appoint taint teams to review and redact privileged information, such would not be appropriate in this case. The Government cited several federal district court decisions addressing taint teams. In one case, the United States District Court for the District of Columbia identified four considerations prior to authorizing a taint team: (1) use of taint teams should be limited to exigent circumstances in which government officials have already obtained physical control of potentially privileged documents; (2) whether the lawfulness of the Government's possession of the potentially privileged documents was not initially challenged; (3) whether the documents at issue are extensive; and (4) the impact on the taint team's participation on the appearance of fairness in the case. *See United States v. Jackson*, No. 07-0035, 2007 U.S. Dist. LEXIS 80120, at *16–17 (D.D.C. 30 Oct. 2007) (order) (citations omitted). Here, we see no indication the military judge considered any of those factors. Instead, after deciding that an attorney was required to review and redact privileged information, the military judge appointed an attorney apparently not affiliated with the records-holding organization to complete the review.

In this case, the military judge's appointment of an outside attorney to conduct a Mil. R. Evid. 513 privilege review and redaction was the functional

---

[11] We note that the United States Court of Appeals for the Sixth Circuit in *In re Grand Jury Subpoenas,* 45 F.3d at 522, emphasized that "government taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially privileged documents through the exercise of a search warrant," a circumstance arguably *not* present here where it was the 31 OMRS/MHF, and *not* the trial counsel, who were in possession of Petitioner's mental health records.

equivalent of him appointing a "special master"[12] to conduct the review. However, unlike for a federal district judge, we see no authority under current military procedures for a military trial judge to appoint a special master. *Cf.* FED. R. CIV. PRO. 53; *see* note 12, *supra*. No party has persuaded us otherwise.

In the end, the military judge violated Petitioner's statutory right to privacy and violated Mil. R. Evid. 513 when he appointed an attorney unaffiliated with the records-holding organization to review her mental health records for privileged material. The military judge suspected Petitioner's records contained privileged communications, and ordering those records be sent to the JACC attorneys violated Petitioner's right to privacy in her confidential communications.

We do not read R.C.M. 701(g) in a vacuum. The military judge's authority to regulate discovery of non-privileged portions of Petitioner's mental health records under R.C.M. 701(g) is circumscribed by the "partially protected" nature of mental health records under Mil. R. Evid. 513.

The core privilege established by Mil. R. Evid. 513(a) broadly empowers a patient to prevent any disclosure from one person to another, and the military judge's ruling purported to compel such a disclosure to attorneys at JACC apparently unaffiliated with the organization maintaining the records. As the CAAF has noted, the disclosure of those unredacted mental health records tends to trigger the protections of Mil. R. Evid. 513(e) to the extent those records are likely "partially privileged" (i.e., to the extent they reveal confidential communications). *See Mellette,* 82 M.J. at 379.

The military judge had the authority to order mental health records or confidential communications be produced for in camera review when the requirements of Mil. R. Evid. 513(e) are met—but whether those requirements were met was not even litigated before the military judge.

Rather, under the unique facts of this case—where the military judge directed the functional equivalent of in camera review of Petitioner's mental health records, but then designated a specific person unaffiliated with the

---

[12] In federal criminal and civil law settings, a special master is a court-appointed attorney skilled in a particular area of law. The special master, when appointed by a federal district court judge presiding in a particular case, is invested with the authority to, *inter alia*, review information over which a privilege is asserted in order to make a legal determination as to whether the privilege lies. *See* FED. R. CIV. PRO. 53(a)(1)(c) (without the parties' consent a special master may be appointed to address "pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district"); FED. R. CIV. PRO. 53(c) (granting a special master authority to hold evidentiary hearings to accomplish their assigned tasks).

organization that maintains those records to complete that review—Petitioner has a clear and indisputable right to have her records safeguarded from such review. Accordingly, we conclude Petitioner has clearly and indisputably demonstrated she is entitled to relief in the form of vacating the erroneous in camera review orders involving Ms. CM and Maj AW. Moreover, we find there is no other adequate means to secure relief, as Congress has specifically authorized Petitioner to seek mandamus relief from this court for a military judge's ruling affecting protections afforded her by Mil. R. Evid. 513 and Article 6b, UCMJ. Therefore, we find the issuance of such a writ is appropriate under the circumstances.

### III. CONCLUSION

A writ of mandamus is issued in Petitioner's case. The military judge's 27 September 2023 order directing the production of records to Ms. CM, which order this court stayed on 28 September 2023, and oral supplement to that order directing production of records to Maj AW, is **VACATED**.

As part of this writ of mandamus, the military judge shall ensure all records released in accordance with the vacated orders are either sealed or destroyed.[13]

With the military judge's 27 September 2023 order and supplement thereto vacated, the military judge may take action to rule on the RPI's motion to compel discovery in a manner consistent with the rules, as may be appropriate.

DOUGLAS, Judge (concurring):

I concur with the conclusion by my esteemed colleagues to vacate the military judge's 27 September 2023 order, but I write separately to explain why all iterations should be vacated.

First, as explained by the majority opinion, the trial judge's written order on 27 September 2023, and as modified by a verbal order on 28 September 2023, exceeded his authority when he appointed an attorney unrelated to the records to review, redact, and then release to counsel, the named alleged victim's mental health records.

Second, common to all iterations of the order, starting with the written order on 26 September 2023, through the verbal order issued on 28 September

---

[13] We suggest that preserving the sealed Petitioner records as appellate exhibit in the record of trial may be appropriate in this case. Upon remand, the military judge may exercise his discretion to decide whether to preserve the sealed records as an appellate exhibit in the record of trial. *See* R.C.M. 701(g)(2); R.C.M. and 1113.

2023, the trial judge ordered production of "all" or "the" "mental health diagnosis and treatment records pertaining to [named alleged victim] from 1 December 2017 to present maintained by the 31st Operational Medical Readiness Squadron, Mental Health Flight." By doing so, he ordered production of almost six years of mental health records, known to exist, which inherently triggered analysis under Mil. R. Evid. 513 by the reference to "records." Mil. R. Evid. 513(b)(5).

I recognize the trial judge attempted to resolve a discovery request, through the lens of Rules for Courts-Martial (R.C.M.) 701 and 703, Mil. R. Evid. 513, and *United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022), *cert. denied*, 143 S. Ct. 2637 (2023). I further recognize, that most likely, the trial judge was attempting to thread the needle and order production and release of non-privileged ("*Mellette*") diagnosis and treatment information. However, I cannot ignore the fact that when the military judge is going to order production of mental health *records*, to find diagnosis and treatment information, then Mil. R. Evid. 513 is necessarily triggered.

Further, the trial judge avoided applying the process requirements of Mil. R. Evid. 513, and potentially R.C.M. 701, and R.C.M. 703, by presumably inartfully articulating what he intended. By failing to comply with any of these rules, I fail to appreciate what, if any, analysis the military judge may have made in deciding to issue this order.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court